**UNITED STATES of America,
Plaintiff,**

v.

**John R. FISHER, Defendant.**

**No. 4–71 Cr. 45.**

United States District Court,
D. Minnesota,
Fourth Division.

July 22, 1971.

Robert G. Renner, U. S. Atty., by Thorwald H. Anderson, Asst. U. S. Atty., for plaintiff.

Katz, Taube, Lange & Frommelt, by Steven Z. Lange, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

On this pretrial motion to suppress, defendant testified that on October 31, 1970 circa 12:30 A.M. he was a patron at the 400 Bar on Cedar Avenue in Minneapolis. He ordered a drink and tendered in payment thereof a $20.00 bill. Shortly the bartender accused him of paying with counterfeit money. Defendant requested a return of the $20.00 bill and to be allowed to pay with other money when the bartender physically seized him. He was taken outside. A group of people gathered according to one version and wrestled him to the ground. Shortly two policemen arrived. Defendant was arrested, searched and in a brief time taken to jail. The police removed his money and wallet from his person.

At the jail, two United States Secret Service agents arrived in approximately

45 minutes. They presented and read to defendant and at 2:00 A.M. he signed Defendant's Exhibit 2, embodying *Miranda* [1] warnings reading as follows:

### "WARNING AND CONSENT TO SPEAK

You must understand your rights before we ask you any questions.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will be appointed for you. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

### CONSENT TO SPEAK

I have read this statement of my rights and it has been read to me, and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

/s/ JOHN R. FISHER
Signature

10–31–70 2. A.M.
Date and Time

### CERTIFICATION

I HEREBY CERTIFY that the foregoing Warning and Consent were read by me to the above signatory, that he also read it and has affixed his signature hereto in my presence.

/s/ Lyle G. Workman
Signature – Agent

/s/ R. Hallerum
Witness

Witness "

The Secret Service agents then questioned defendant for some two hours after which they directed the jailer to detain him further. On request he wrote in pen and ink on paper the name "John Borklo" eight or ten times. Defendant testified he was not allowed to make a telephone call, had no sleep and at approximately the next noon was interrogated again by three Secret Service men and signed an exact duplicate of Defendant's Exhibit 2 except it bears the time notation of 10/31/70, 11:50 A.M.

He testified he never really read the document either time, a fact to which the court gives little weight. He further testified however—and this would seem to be of import—that he was told at 11:50 A.M. that he could cease talking at any time. The form he signed in fact so states. His testimony is to the effect that at this second interrogation he stat-

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ed "This is getting a little serious" and thereafter he refused to answer any further questions. He claims that one of the interrogating officers then stated that as a "smart alec" he would get a jail term of 45 years. The Secret Service agent denied any such statement and testified that after about 15 minutes of the second interrogation, defendant stopped and said "I think I should see an attorney." This was at the point where he was asked to relate his movements the night before. No further questioning ensued and at approximately noon defendant was brought before a United States Commissioner. He was there for 10 or 15 minutes and according to his testimony, which is not controverted, he asked to consult or to be represented by the public defender. He was told by the Commissioner that such could not be done.[2] Bail was set in the amount of $10,000, which in due course defendant posted. Since the date of the return of the six-count indictment on February 11, 1971 he has been represented by his present counsel.

Defendant stated that he wanted to call his wife on the telephone to advise of his whereabouts but several times was denied this right by the jailer. His counsel argues that he was upset, lacked sleep and was under pressure to let his family know of his location. After the appearance before the Commissioner, defendant was asked by Secret Service agents whether he objected to a search of his home at 35 N.E. 62nd Way, Fridley, Minnesota. He claims he asked again to use the telephone and the Secret Service agents stated they would have his wife call him when they arrived at his home. Approximately 12:30 P.M., and his counsel claims under circumstances amounting to duress, he signed a consent, Defendant's Exhibit 3,[3] reading as follows:

"Oct. 31 1970
_____
(Date)

_____
(Location)

I, <u>John Richard Fisher</u>, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize _____, and
Names of Officers or Agents

_____ _____, to conduct
Titles of Officers or Agents and Name of Agency

a complete search of my premises located at <u>35 N.E. 62 Way</u>. These (officers or agents) are authorized by me to take from my premises any letters, papers, materials or other property which they may desire.

This written permission is being given by me to the above-named persons voluntarily and without threats or promises of any kind.

(SIGNED)

/s/ John Fisher

WITNESSES:

/s/ Thor Anderson
/s/ Richard J. Shanahan"

---

2. Under the plan adopted for the District of Minnesota · under the Criminal Justice Act, the public defender system is not used nor provided for, the court and the commissioners making individual appointments from an approved list of

The Secret Service agent testified that after obtaining Exhibit 3, he and another agent went to defendant's home. Defendant's wife freely permitted entry and he seized a set of license plates in the corner of the garage while another special agent in the house seized a sales receipt from the Knox Lumber Company and a clipping from the Minneapolis newspaper containing a counterfeit warning to the public. The testifying agent also searched a pickup truck parked in the yard of defendant's home, but the court need not approach the question of whether this was within the ambit of the consent to search (Exhibit 3) since he testified he seized nothing therefrom and the government stated in open court that it has no evidence seized from the truck that it wishes or intends to use at the trial.[4]

 The court holds the consent to search, evidenced by Exhibit 3 above quoted, to be invalid. Without doubt there is some merit to the contention that as a matter of fact under all the circumstances the consent was not freely and voluntarily given, and this court subscribes to the statement in Rosenthall v. Henderson, 389 F.2d 514 (6th Cir. 1968):

" * * * consent to a search, in order to be voluntary, must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion, and is not lightly to be inferred." 389 F.2d at 516

 Apart from the question of the voluntariness of consent as a fact question, however, this court is of the view that the search violated defendant's *Miranda* rights. He stopped answering during the second interrogation, and then and later at the Commissioner's hearing asked for the aid of an attorney. Despite this, the agents proceeded to procure from him the written consent to

search. The very purpose of the *Miranda* warning are to permit a defendant to refuse further interrogation and to enable him to obtain legal advice as to his rights. The interrogating officers, in any case, when a defendant so expresses himself and lodges such a request, should not continue interrogation nor seek further to procure consensual admissions from him, whether in the form of confessions, consents to search, waiver of privilege or otherwise. The argument of course is present that *Miranda* was a Fifth Amendment case and did not countenance a Fourth Amendment search and seizure claim. This court believes a defendant's Fourth Amendment rights are encompassed by *Miranda*. No one here orally advised defendant, so far as the testimony discloses, of his right not to consent to a search, though Exhibit 3 contains language to this effect, nor the consequences thereof. Certainly this is a vital or critical step in his case, and having asked for counsel he was entitled to advice of counsel as to the consequences of what he was doing and as to what would be required to obtain a search warrant. The only direct authority that has come to the court's attention—and with which this court agrees—is United States v. Pelensky, 300 F.Supp. 976 (D. Vt.1969), which concludes:

"The right to counsel, and the *Miranda* warning informing the accused of this right, while imposed to protect fifth amendment rights in *Miranda*, is more pervasive. It is not linked solely to the protection of fifth amendment rights but applies in every 'critical' stage of the proceedings. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Certainly a request to produce evidence that is central to the prosecution's case

---

3. Defendant claims, and the Agent denies, that after giving this consent he requested it back but his request was ignored. In any event, two hours later or thereabouts he received a phone call at the jail from his wife.

4. Defendant testified that the license plates actually were wrapped in a rag and were under the front seat of the pickup truck. The agent's testimony in this regard would seem more reliable. In either event, however, in view of the government's statement and position, the plates should be suppressed for reasons discussed further in this opinion.

is a critical stage of the proceedings against the accused. The presence of counsel is an effective check on the unknowing relinquishment of fourth amendment rights just as it is an effective check on the unknowing waiver of fifth amendment rights. Therefore, production of evidence by an accused without the assistance of counsel or without waiver of counsel where, as in *Miranda*, the defendant is under arrest, cannot be considered a knowing and intelligent act." 300 F.Supp. 978–979.

*Pelensky* was a case where no *Miranda* warnings were in fact given. The result this court reaches would follow as an *a fortiori* where warnings were given yet defendant refused to talk and requested counsel.

Noteworthy also is the fact that in the case at bar there was no immediacy to the situation. Defendant was incarcerated and had not yet made bail; the Commissioner, who can authorize a search warrant, was present and yet no application was made therefor. This was not a search incident to arrest nor under any exigency. If in fact the Secret Service agents had probable cause to believe that the items they ultimately found were in defendant's house, there would have been no problem in securing a search warrant and proceeding accordingly.[5]

Accordingly the court grants defendant's motion to suppress the items seized at defendant's residence and any "fruits" thereof and of course any oral testimony concerning the same. The items of personal property shall, on demand by defendant, be returned to him. The most recent case from the United States Supreme Court, though not analogous on its facts, evidencing the jealousy with which it regards a defendant's rights to be free from unlawful search and seizure is Collidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The other parts of defendant's motions are relatively simple of resolution. After defendant's arrest by a Minneapolis police officer, he extracted from defendant's wallet, and the government now has possession thereof, a $20 counterfeit bill bearing exactly the same serial number as the one defendant gave the bartender and some or one other $20 bill. Undoubtedly the officer had a right so to do, having made a lawful arrest on probable cause—the radio message to his squad car and the information given him by the bartender, Wigestrand at the scene when he and his squad car partner arrived. The officer made a lawful arrest under existing Minnesota law.

The legality of this arrest is to be determined according to State law consistent with federal constitutional standards of probable cause. Minnesota law permits a warrantless arrest for a felony whenever there is probable cause to believe that a felony has been committed and that the arrestee has committed it. Minn.Stat. § 629.34(3). United States v. Wahlquist, 438 F.2d 219 (8th Cir. 1971); Turk v. United States, 429 F.2d 1327 (8th Cir. 1970); Klingler v. United States, 409 F.2d 299 (8th Cir. 1969).

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), furnishes ample authority for the seizure made at the time of the arrest:

"* * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, *it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.* And the area into which an arrestee might reach in order to grab a weapon

5. From what little the court knows of the case, there would seem to be some doubt whether the agents in any event could have established under oath the probable cause necessary to obtain a search warrant. If so, defendant was entitled to advice of counsel on this point.

or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 762–763, 89 S.Ct. at 2040

■ As to a search of a farm owned by defendant in Isanti County, the government states it seized nothing there that it intends to use at trial and so the validity of any such search is moot as is the search of one or two other trucks owned by defendant (if in fact made) for the same reason.

■ The search of the defendant's car parked a block or more away from the 400 Bar was not made until two days later, i. e., on November 2, 1970, and was on the basis of a search warrant obtained on an affidavit of one of the Secret Service special agents and is and was clearly sufficient to establish probable cause. Items seized therefrom are not suppressed.

A separate order has been entered.