ROBERT E. PIRTLE *v.* STATE OF INDIANA.

[No. 1748. Filed February 25, 1975. Rehearing denied May 21. 1975.]

*Donald D. Chiappetta,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

DeBRULER, J.—Appellant, Robert E. Pirtle, was convicted in a trial by jury of First Degree Murder, Ind. Code § 35-13-4-1, being Burns § 10-3401 (1974 Supp.). On appeal, he presents three issues: (1) the admission of evidence found in the search of his apartment and of testimony concerning that evidence; (2) the admission of evidence found in the search of the car he was driving and of testimony concerning that evidence; and (3) the admission of allegedly irrelevant evidence.

Appellant was arrested in the early morning of December 24, 1972, for possession of a stolen car. An officer entered the car to look for the owner's registration and saw the handle of a gun. Another officer removed the gun from the car. At the police station, appellant was questioned. In the afternoon, he signed a waiver allowing a search of his apartment. During the search, officers found the wallet of the victim of a December 16, 1972, homicide and met two men who confessed their part in the homicide and implicated appellant. Appellant was charged with First Degree Murder.

The court had a hearing on appellant's motion to suppress the evidence found in the two searches. The motion was denied. At the trial itself, appellant properly objected to the introduction of this evidence.

I.

At the hearing on the motion to suppress, Officer White testified that he arrested appellant at a filling station at 2:48

a.m., December 24, 1972. He read appellant his constitutional rights as required by *Miranda* after appellant was seated in the squad car. Appellant made no waiver in response thereto. When appellant arrived at the police station, another officer read these rights to him between 3:00 and 4:00 a.m. Again, no waiver was given. Detective Hovis, who was in charge of the investigation at that time, heard these rights read. Hovis testified:

> "A. I asked him if he wanted to talk to us about this and he said he would like to talk to his attorney, talk to an attorney first.
> * * *
> A. I said, 'You can call an attorney, there's a phone on the desk.'
> * * *
> Q. Now, after he asked for an attorney, did you continue to talk with this man?
> A. We sat there and talked for quite a while."

Hovis testified that nothing which appellant said led to any information on the murder case. He could not remember whether he had told any other police officer that appellant wanted an attorney.

Officer Stonebreaker talked to appellant about 3:00 p.m., December 24th. He testified that, due to prior investigation on that day, appellant had been mentioned as a possible suspect in the homicide-robbery of Clifford Levi, largely because appellant was so willing to talk about the stolen car and potential armed robbery. Appellant was advised of his rights again, and again no waiver was given. Stonebreaker did not know appellant had requested an attorney, and he testified that he would not have questioned appellant if appellant had asked him for an attorney. His response is precisely correct. Detective Cox also questioned appellant, but testified that he would not have done so had he known appellant had asked for an attorney. Cox learned appellant's address. He asked appellant if he would authorize a search of the premises, and appellant agreed and signed a search waiver. The officers searched his

apartment and found evidence which incriminated him in the Levi murder.

Appellant testified that he had lived in Muncie only six weeks and knew no attorneys. He said that he had requested an attorney only one time, because he thought his second and third request would get the same response. He testified that he had not wanted an attorney by the time he signed the search waiver.

Appellant has raised as a first error the failure of the court to suppress real evidence and testimony which was discovered during the search based on appellant's consent. He argues that the consent was not validly given, since he was denied his right to counsel before questioning. Prior to *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, courts would determine whether a defendant voluntarily consented to the surrender of one of his constitutional rights by assessing the circumstances in each case. In *Miranda*, the court determined that the atmosphere of in-custody interrogation was inherently coercive. Knowledge of his rights and the presence of counsel would help defendant make a voluntary decision whether or not to make a statement to the police.

The Muncie Police Department read appellant an unequivocal statement of his rights. In relevant part, it was:

> "You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer one will be appointed for you before any questioning, if you wish."

Since *Miranda*, the procedure, once warnings have been given, is clear.

> "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."

384 U.S. at 474.

24

In this case, Officer Hovis testified, "I asked if he wanted to talk to us about this and he said he would like to talk to his attorney, talk to an attorney first." The officer's reply, "You can call an attorney," was curt, but perhaps reasonable. However, when appellant did not use the phone, the officer had a duty to ascertain what appellant meant by his request. *U.S.* v. *Nielsen,* 392 F. 2d 849 (7th Cir. 1968). A person must know that the recitation of his rights is not merely a ritualistic formula. Compare *Mims* v. *State,* (1970) 255 Ind. 37, 262 N.E.2d 638. Not only should Hovis himself have discontinued questioning, but also he should have informed the other officers of appellant's request.

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475.

> Neither the officers nor this Court can assume that appellant silently waived his right to counsel by his failure to use the phone.

> "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." 384 U.S. at 475, quoting *Carnley* v. *Cochran,* (1962) 369 U.S. 506, 516, 82 S. Ct. 884, 8 L. Ed. 2d 70.

Waiver is a prerequisite to the admission of any statement by defendant. In this case, the officers testified that nothing that appellant said led to any information implicating him in the Levi homicide. However, the officers testified that they became suspicious largely because he was so willing to talk. The defense asked Officer Cox:

> "Now, Officer, if you had known Mr. Pirtle requested the presence of an attorney, would you have asked him to sign that waiver?"

Cox replied:

> "It would have been impossible for me to have asked him about that, due to the fact that if I had known this I would not have been interviewing Mr. Pirtle."

Therefore, it is clear that the consent to search was signed when an officer was questioning appellant at a time when no questioning should have been in progress. The consent was a product of a violation of appellant's *Miranda* rights. It therefore cannot serve to legitimate the warrantless search of appellant's apartment, and the trial court erred in not excluding the fruits of that search.

We have found one case in which the factual context was very similar. In *U.S.* v. *Fisher,* 329 F. Supp. 630 (D. Minn. 1971), the defendant was in jail and had been informed of his *Miranda* rights, which he then waived. At a point during questioning, he requested an attorney before he answered any more questions. Interrogation ceased but he was told that he could not be given an attorney at that time. Later he was asked if he would sign a consent to search, and he agreed.

That court noted that the consent might not have been voluntary in all the circumstances, but that its decision was based on the fact that the search violated the defendant's *Miranda* rights. When a defendant requests legal advice, the police "should not continue interrogation nor seek further to procure consensual admissions from him, whether in the form of confessions, consents to search, waiver of privilege or otherwise." 329 F. Supp. at 634. The court noted that the defendant had not been informed of his Fourth Amendment rights, although the waiver form implied that he had been so informed.

> "Certainly this is a vital or critical step in his case, and having asked for counsel he was entitled to advice of counsel as to the consequences of what he was doing and as to what would be required to obtain a search warrant." 329 F. Supp. at 634.

The Sixth Amendment of the Constitution of the United States and Art. I, § 13, of the Indiana Constitution guarantee a defendant the assistance of counsel for his defense. The right to counsel applies "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *U.S.* v. *Wade,* (1967) 388 U.S. 218, 226, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. An accused is entitled to consult with counsel while in police custody. *Winn* v. *State,* (1953) 232 Ind. 70, 111 N.E.2d 653; *Dearing* v. *State,* (1950) 229 Ind. 131, 95 N.E.2d 832. In *Wade,* the United States Supreme Court held that counsel is required at lineups, although a defendant's participation in a line-up is not self-incriminating. The Court noted that nothing in *Miranda* linked the right to counsel to the Fifth Amendment alone and based its decision on the potential for substantial prejudice to a defendant at a line-up, which counsel could mitigate. The Court emphasized the importance of pre-trial confrontations with the prosecution, which could reduce the trial to a mere recital of the evidence. Only the presence of counsel at the critical early stages would assure defendant of a fair trial.

We have no doubt that the decision to consent to an unlimited search is a vital stage in the prosecutorial process. As the Court noted in *Escobedo* v. *Illinois,* (1964) 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977:

"There is necessarily a direct relationship between the importance of a stage to the police in their quest for a confession and the criticalness of that stage to the accused in his need for legal advice." 378 U.S. at 488.

The United States Supreme Court has built protective laws around the Fourth Amendment right to be free from unreasonable searches and seizures. A search warrant may issue only upon probable cause supported by an affidavit particularly describing the place and

property to be searched. *Marron* v. *U.S.*, (1927) 275 U.S. 192, 48 S. Ct. 74, 72 L. Ed. 231. Only a neutral magistrate may issue the warrant. *Coolidge* v. *New Hampshire*, (1971) 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564. It must include enough information to allow the magistrate himself to determine whether there is probable cause for a search. The information must be based on the officer's personal knowledge or on a credible tip from a reliable informer. *Aguilar* v. *Texas*, (1964) 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723. A person who consents to a search gives up all these protections and subjects himself to a general search without probable cause.

We also have no doubt that the presence of counsel would be useful in preventing substantial prejudice. In the present case, Officer Cox was questioning appellant when the matter of the search waiver was raised.

"A. I asked him a question in regards to the waiver when I presented it to him. I was quite pleasant to him. And I merely asked him if there was anything in his apartment he would not want me to see or would not want me to view at any time.

Q. And what was his answer?

A. And he stated that there was not, and I asked him if he would sign a voluntary search waiver, giving me permission to search his residence, and he stated he would, he had nothing to hide.

Q. And then did he sign it?

A. Yes, he did."

The sequence of these questions was such that a defendant without legal advice could easily think that if he refused to sign a written consent to a search, the officer would believe he was lying when he said he had nothing to hide. The search waiver which he signed read as follows:

"I, Robert Eugene Pirtle, having been informed of my Constitutional rights not to have a search of the premises hereinafter mentioned without a search warrant and of my rights to refuse such a search, hereby authorize: [A com-

plete search of my residence.] This written permission is being given by me . . . voluntarily and without any threats or promises of any kind."

Contrary to the implication of the waiver, the record indicates that Officer Cox had not informed appellant of his Fourth Amendment rights; orally, appellant had had no advice on his Fourth Amendment rights, although he had been in custody for twelve hours at the time he signed the search waiver. No one told him that anything found in the search could be used against him at trial. No one told him that if he refused consent, the officers would have to specify what they were looking for and their reasons for believing appellant had those items in order to get a search warrant.

Without counsel, appellant could have no conception of the extent of his Fourth Amendment rights. Yet his consent to allow a search was critical. Prior to the search, the police had no evidence to connect appellant with the homicide. The evidence revealed as a result of this search gave the police probable cause to arrest appellant for the murder, and there can be no doubt that the evidence helped secure appellant's conviction.

When a defendant is in custody at the police station there is no "practical" reason for depriving him of the assistance of counsel in making the decision whether to consent to a search. Again and again the United States Supreme Court has emphasized the importance of the right to counsel in protecting other constitutional rights. In *Escobedo,* Justice Goldberg wrote:

We have learned the "lesson of the history that no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights. No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights." 378 U.S. at 490.

We hold that a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent. This right, of course, may be waived, but the burden will be upon the State to show that such waiver was explicit, and, as in *Miranda,* the State will be required to show that the waiver was not occasioned by the defendant's lack of funds.

## II.

In a trial in a state court, evidence which was discovered during a search prohibited by the Fourth Amendment is inadmissible. *Mapp* v. *Ohio,* (1961) 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. Evidence which the State discovered by using the illegally found evidence is also inadmissible. *Wong Sun* v. *U.S.,* (1963) 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441. In that case, the narcotics which Yee gave to the police were inadmissible against Toy, because the police learned about Yee's narcotics from statements by Toy during an illegal search of Toy's home. This Court recognized that the State may not exploit illegally acquired evidence in *State* v. *Dowlut,* (1968) 250 Ind. 86, 235 N.E.2d 173. There, the accused, while in police custody following his warrantless arrest for murder, told the police the location of the weapon used in the homicide. This Court determined that the statement was inadmissible, since, at the time appellant made the statement, he was being unlawfully detained and since the statement was involuntary. The Court went on to hold that the gun and testimony concerning ballistics tests also should have been suppressed because they were the "poisoned fruit" of the illegal detention and involuntary confession.

In overruling appellant's motion to suppress and his objections at trial to the admission of evidence found in the

apartment search, the trial judge based his rulings on his determination that the consent to the search was valid. Consequently, he was not required to consider whether the evidence was a product of the search we now hold to have been unlawful. The physical evidence, that is, the boxes of .20 caliber bullets and the victim's wallet, is clearly inadmissible. *State* v. *Buxton*, (1958) 238 Ind. 93, 148 N.E.2d 547; *Dalton* v. *State*, (1952) 230 Ind. 626, 105 N.E.2d 509. The testimony of Kirk, the owner of the sporting goods store who sold appellant the boxes of bullets, also may be inadmissible. *Dowlut* v. *State, supra*. However, the admissibility of the testimony of witnesses, whom the officers met and arrested during their unlawful search and who may have known that the officers had found the wallet and bullets, is a matter of first impression in this State. The transcript includes some significant evidence. However, the evidence is insufficient to permit this Court to determine whether the testimony was the product of the search. For this reason, we believe the trial judge should take evidence on the issue and rule on the admissibility of the testimony of Kirk and of the two accomplices, Watt and Phillips.

With regard to the accomplices, the trial court must take evidence which will clarify the relationship between the discovery of the accomplices during the illegal search and their testimony at trial; or the relationship between the items found in the search and the accomplices' testimony. Evidence of facts, forces and pressures arising from the search which naturally would tend to convince the witnesses to testify adversely to appellant is important. Evidence that the witnesses knew that the police had found the victim's wallet, that the witnesses made incriminating statements at the scene, that the witnesses confessed immediately, or that they made formal statements implicating themselves soon after their arrest at the apartment would attest to an exploitation of the original illegality. *Wong Sun*, 371 U.S. at 488. Evidence of facts, forces and pressures arising outside of the search which

would tend to encourage the witnesses to testify as they did is equally important. If the police had evidence independent of the search which would connect the men to the homicide and confronted them with it, or if the men thought that the police would *necessarily* discover the relationship between the accomplices and the crime, then the link between the illegal search and the testimony is weaker. *If* the police would not have discovered the witnesses but for the search, can the State show that the decision to testify was made because of another incident unrelated to the search? Prominent cases dealing with the legal standards involved here are: *Silverthorne Lumber Co.* v. *U.S.*, (1920) 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319; *Harrison* v. *U.S.*, (1968) 392 U.S. 219, 88 S. Ct. 2008, 20 L. Ed. 2d 1047; *Smith and Bowden* v. *U.S.*, 324 F. 2d 879 (D.C. Cir. 1963); *McLinden* v. *U.S.*, 329 F. 2d 238 (D.C. Cir. 1964); *Smith and Anderson* v. *U.S.*, 344 F. 2d 545 (D.C. Cir. 1965); *People* v. *Martin,* (1943) 382 Ill. 192, 46 N.E.2d 997; *People* v. *Albea,* (1954) 2 Ill. 2d 317, 118 N.E.2d 277; *People* v. *Mendez,* (1971) 28 N. Y. 2d. 94, 268 N.E.2d 778, 320 N. Y. S. 2d 39; and *Commonwealth* v. *Cephas,* (1972) 447 Pa. 500, 291 A. 2d 106.

Once the defendant has proved that an illegal search took place, he must prove that the testimony was a fruit of the poisonous tree, while the State has the burden of proving that the testimony had an independent source. If the road from the illegal search to the testimony, even if long, was straight, then the testimony was the product of the illegal search. *People* v. *Johnson,* (1969) 75 Cal. Rptr. 401, 450 P. 2d 865. *If* the testimony is inadmissible, the *facts* within the testimony may be admitted if there was an independent source of the facts. At trial, the State may prove by other witnesses, whose testimony is not a product of the search, any facts within the inadmissible testimony.

In suppressing evidence which is material and relevant, but which is obtained by the exploitation of constitutionally pro-

hibited police conduct, the courts are attempting to deter the proscribed conduct by making it unprofitable. In regard to the Fourth Amendment, the illegal conduct is the initial invasion of the privacy of a person or his property. No subsequent exclusion of evidence will restore that privacy. However, the courts have determined that, at the least, the Government should not have the advantage of its wrong in a case against the person whose privacy was invaded. *Weeks* v. *U.S.*, (1914) 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652. In determining whether the proffered evidence is clearly linked to the unconstitutional conduct, the trial court should consider the Court's statement in *Nardone* v. *U.S.*, (1939) 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307:

> "To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.' " 308 U.S. at 340.

### III.

In the hearing on the motion to suppress evidence, Officer White testified that he had heard a bulletin for a stolen car. He saw a car of that description, pulled into a filling station behind it, and noted that the license number matched the number in the bulletin. Appellant was getting out of the car. When White spoke to appellant and asked him for identification, appellant was about three feet away from the car's back bumper. Appellant gave the officer several pieces of identification but all of them had been altered. The officer arrested him for possession of a stolen vehicle. He searched him and put him in the back seat of the police car.

Officer White then entered the car to look for the registration. When he was inside, he looked down at the floor and saw the handle of a gun protruding from under the front seat. He reported his discovery to another officer, and the second officer removed the gun from the car.

The officers testified that the car was not blocking traffic on the street. They thought they could have gotten a search warrant at that time although they had never had an occasion to get one before. They considered the car in police custody as soon as appellant was arrested. Although none of the officers had seen the handle through the window, they believed it would have been visible.

The trial court denied appellant's motion to suppress. Assuming arguendo that the trial court found that appellant had standing, we believe the evidence before the court adequately supported the judge's denial of the motion to suppress.

Appellant does not argue that the officers did not have probable cause to believe that the car was stolen or probable cause to arrest the appellant for possession of a stolen vehicle. We agree with appellant that the officer's search of the car would not fit into the category of a "search incident to an arrest". The officer had no reason to enter the car to search for weapons or destructible evidence, when neither appellant nor his juvenile companion were within reach of the interior of the car at the time of the arrest, and both had been placed in the back seat of the police car at the time White entered the car. *Chimel* v. *California,* (1969) 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685.

However, the circumstances of the arrest in this case gave probable cause for a limited search for identification of the car without a warrant. The officers had reason to believe the car was stolen since the exterior and the license plate precisely matched the vehicle described in the radio report. Appellant had already been arrested on the stolen vehicle charge. Therefore, this search was not exploratory, seeking evidence of crime without reasonable cause, but was intended to provide further verification that the car was stolen by examination of the registration certificate, which is required by law to be kept in automobiles for identification purposes.

In the process of making his limited search for the registration, the officer saw the gun. The trial court correctly

determined that the gun and subsequent tests of the gun were not the product of an unlawful search of the car. We affirm the denial of appellant's motion to suppress the gun and the tests of it.

## IV.

Appellant's final claim of error is that the boxes of .20 caliber bullets found in his home, the testimony of the owner of a sporting goods store who sold him the bullets, and the bullet found in the clothing of the decedent were erroneously admitted because they were irrelevant to the cause of action. The relevancy of the boxes of bullets is not at issue, because they must be suppressed as the product of an illegal search. The testimony and the single bullet were clearly relevant. "[T]he most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?*" MC CORMICK, EVIDENCE, § 185 at 437. In Indiana, "evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight." *Thomas* v. *State*, (1968) 251 Ind. 76, 80, 238 N.E.2d 20.

The identity of the person who killed the decedent was obviously material. Appellant's two accomplices testified that only appellant had a gun; one of them said that he saw appellant kill the decedent. The State sought to buttress their testimony with the evidence that appellant had purchased .20 caliber bullets on the day of the homicide. This evidence made more probable the inference that appellant was the person who had killed Levi. A bullet found in the clothing of the decedent made more probable the inference that he had been killed by that bullet. Therefore, these two items of circumstantial evidence were probative of material issues.

Appellant objects that the State never proved the connection between the items of evidence and the death. But this is

the nature of circumstantial evidence. Its probative value is limited. The State introduced the evidence so that the jury might draw inferences from it, but the weight of the evidence was for the jury. Appellant's objection should be distinguished from an objection that the State did not lay a proper foundation, locating the items with respect to appellant or the deceased and establishing a chain of custody, or an objection that the evidence as a whole was not sufficient to support the jury's verdict.

For the reasons heretofore stated in this opinion the judgment of the trial court is reversed with instructions to grant a new hearing on appellant's motion to suppress and to grant a new trial.

Prentice, J., concurs; Givan, C.J., concurs in result with opinion in which Arterburn, J., concurs; Hunter J., concurs in Parts I, III and IV, and concurs in result in Part II, with opinion.

CONCURRING OPINION

HUNTER, J.—I concur in Parts I, III and IV. I concur in result in Part II, with opinion.

Were we writing on a clean slate, the logical distinction between physical evidence seized in an unlawful search and verbal statements made by persons present at the search situs would seem appealing. However, *Wong Sun* v. *U.S.*, (1963) 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, held that the fourth amendment policies underlying the exclusionary rule forbade such distinction. Verbal "fruits" are therefore suppressible. Nevertheless, facts within an inadmissible statement are admissible if the prosecution establishes that its knowledge of the facts flowed from a source independent of the unlawful search, *see Silverthorne Lumber Co.* v. *U.S.*, (1920) 251 U.S. 385, 392, 64 L. Ed. 319, 321, 40 S. Ct. 182. Alternatively, verbal statements may be admissible under the attenuation theory, see *Nardone* v. *U.S.*, (1939) 308 U.S. 338, 341, 84 L. Ed. 307, 312, 60 S. Ct. 266. The

latter theory was applied in *Wong Sun,* 371 U.S. 471, 491, 9 L. Ed. 2d 441, 457, 83 S. Ct. 407, with the result that an unsigned confession, made after his arraignment and release upon his own recognizance, was properly admitted against Wong Sun.

A superficial analysis of the attenuation doctrine as applied in *Wong Sun* might lead to the conclusion that the mere lapse of time alone resulted in the statement being attenuated, and therefore admissible. A closer analysis suggests that the relevant inquiry is whether requisite procedural due process has been afforded. An affirmative answer to this inquiry should make verbal statements prima facie admissible. It therefore becomes necessary to know whether Watt and Phillips were given their Miranda rights prior to their statements. If so, I would hold their statements admissible without further ado. If not, the trial court must determine whether the statements were, nevertheless, voluntary. If so, they should be admitted.

## OPINION CONCURRING IN RESULT

GIVAN, C.J.—I concur in the result of the majority opinion in this case.

I cannot agree that the search of the Appellant's apartment produced the *testimony* of his two juvenile accomplices. It is true the record in this case discloses that the police first learned of the existence of these accomplices at the time they were conducting the search of Appellant's apartment. However, the subsequent decisions of these accomplices to testify against the Appellant were separate and independent of the search and could, by no stretch of the imagination, be deemed to be fruits of the search. Certainly the accomplices could not have escaped prosecution on the basis that their association with the Appellant was discovered at the time an illegal search was being conducted. The search was improper as set out by the majority; the billfold of the victim and the boxes of cartridges found during the search should

not have been admitted. These items should be excluded on retrial, but the testimony of the accomplices should be admitted.

I would, therefore, remand to the trial court with instructions.

NOTE.—Reported at 323 N.E.2d 634.