Gibson, J.
The narrow question presented is this: Where the police obtain the name of a witness by means of an illegal wiretap at the defendant’s premises, may the evidence voluntarily supplied by that witness upon police interrogation be used against the defendant? Or is this witness’ testimony to be excluded as forbidden fruit of the poisonous tree?
Defendant was charged with the crime of abortion under an indictment based, in part at least, on evidence taken from her dwelling upon a search pursuant to a warrant. Underlying the warrant were the affidavit of a policewoman and that of a woman, who subsequently became the complaining witness, upon whom defendant had allegedly performed an abortion.
Upon the first of defendant’s applications for suppression of evidence, the prosecution disclosed that defendant’s telephone had been tapped, but the court would not permit defend *96 ant to inspect the order authorizing the tap nor did it find that the evidence gained as a result of the subsequent search should be suppressed. Defendant thereupon pleaded guilty.
Following additional collateral proceedings and appeals taken in the course of them,[1] the third and final hearing was held, at which it was stipulated, among other things, that the identity of the complainant, who provided one of the affidavits underlying the search warrant, was obtained solely by means of the wiretap and that in the absence of that wiretap her identity would not have been ascertained. At this hearing the policewoman testified that defendant had been placed under surveillance as a result of the wiretap; that when she interrogated complainant, she told her that the police knew an abortion had been performed upon her and that defendant had been followed to her home on that occasion, and that thereupon complainant confirmed that the crime had been committed. The witness testified that she did not inform complainant that her identity had been disclosed by a wiretap. The hearing court, relying primarily on People v. Scharfstein (52 Misc 2d 976), found that the search warrant was based on a source independent of the invalid wiretap, that is, the information furnished by complainant. Her information, said the court, was not induced by knowledge of the wiretap, thus the wiretap was not exploited and, therefore, the warrant was left untainted because it was undergirded by support independent of the wiretap.
The case once again went back to the Appellate Division, which thereupon affirmed the conviction, without opinion.[2] Justice Benjamin dissented, considering that complainant’s statement had been obtained as a direct result of the wiretap, and would not otherwise have been obtainable, and thus, in his view, was clearly a fruit of the poisonous tree. The hearing Judge had, of course, held the other way, finding that although complainant’s identity had originally been disclosed by the illegal wiretap, and although defendant had thereafter, and as a result of the wiretap, been kept under surveillance until she went to complainant’s home to perform the abortion, nevertheless “we do have a source independent of the wiretapping, to wit the surveillance of a suspect abortionist.” The hearing court then *97 proceeded to analyze and approve Scharfstein (52 Misc 2d 976, supra) and Smith v. United States (324 F. 2d 879) and upon the basis of those decisions denied the suppression motion.
The Scharf stein case is almost directly in point. There, the identity of witnesses, the victims of abortions, was learned as the result of illegal wiretaps. Defendants, indicted for the crime of abortion, moved to suppress any testimony by these witnesses. Justice Shapiro ruled that the witnesses’ testimony should be allowed. Starting with Silverthorne Lbr. Co. v. United States (251 U. S. 385), he outlined the history of the poisonous tree theory through Nardone v. United States (308 U. S. 338) to Wong Sun v. United States (371 U. S. 471); the gist of the question being whether, granting the primary illegality, the evidence to which objection is made has been discovered by exploitation of that illegality or, instead, by means sufficiently distinguishable to be free of the primary taint— whether the connection between the primary illegality and the evidence in question is so “ attenuated ” as to dissipate the taint.
It is necessary to make but brief reference to the Silverthorne-Nardone-Wong Sun trilogy.
In Silverthorne, Mr. Justice Holmes, writing for the court, rejected the contention that the protection of the Fourth Amendment extended only to the physical possession of the books and papers which in that case had been unlawfully seized, and continued: “The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government’s own wrong cannot be used by it in the way proposed.” (251 U. S. 385, 392, supra.)
In Nardone, the court, on the basis of its holding in Silverthorne, proscribed the use of the evidence illegally obtained, and its fruits as well; but voiced a limitation upon the general principle: “ Sophisticated argument may prove a causal connection between information obtained through illicit wiretapping and the Government’s proof. As a matter of good *98 sense, however, such connection may have become so attenuated as to dissipate the taint.” (308 TJ. S. 338, 341, supra.)
The latest refinement of the rule appeared in Wong Sun, in which, after quoting Silverthorne and Nardone, the court said: “We need not hold that all evidence is ‘ fruit of the poisonous tree ’ simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is ‘ whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’” (371 U. S. 471, 487-488, supra; emphasis supplied.)
The problem, of course, is to decide upon any given set of facts what amounts to sufficient attenuation. Thus, the court in Scharf stein (supra) reviewed at some length several Federal Circuit Court cases dealing with the essential problem before it, and noted that in United States v. Tane (329 F. 2d 848) it was ruled that evidence sought to be given by a witness whose name was learned by way of an illegal wiretap should be suppressed, but Justice Shapiro observed also, in an attempt to resolve the ‘ ‘ exploitation ’ ’ theory, that in that case the witness was unwilling to testify at all until confronted with the fact that his conversations had been tapped. That point was exposed to show what was meant by exploiting the primary illegality—the fadt of the wiretap itself was used to induce, if not coerce, evidence from an otherwise reluctant witness.[3]
Smith v. United States (324 F. 2d 879, supra) was also cited and discussed in Scharf stein at some length. There the witness’ identity was uncovered in a confession illegally obtained from the defendant. The question was whether the testimony of that witness ought to be suppressed. Judge Burger, as he then was, writing the opinion which found the evidence admissible, stated (pp. 881-882): Courts have gone a long way in suppressing evidence but no case as yet has held that a jury should be denied the testimony of an eyewitness to a crime because of the circumstances in which his existence and identity was learned. * * * Here no confessions or utterances of the *99 appellants were used against them; tangible evidence obtained from appellants, such as the victim’s watch, was suppressed along with the confessions. But a witness is not an inanimate object which like contraband narcotics, a pistol or stolen goods, ‘ speak for themselves. ’ The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is "disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence.”
In manifest reliance upon the rationale of Smith (supra), the court in Scharf stein (supra) concluded its opinion as follows: ‘ ‘ Though the intercepted information here was used to learn the identity of the witnesses, the information, in a legal sense, was not ‘ exploited ’ for the witnesses * * * gave their statements and subsequent testimony voluntarily. The wiretaps were not used to coerce them into testifying. * * * It is the same as if by a trespass the police saw a defendant committing a crime in his home, and at the same time saw someone else therein witnessing its commission. Would it be held to be an invasion of the defendant’s constitutional rights, warranting a suppression, if the witness were followed and asked and told what he witnessed in the home? The answer seems obvious.” (52 Misc 2d 976, 985; emphasis as in original.)
The result in Smith, and in Scharfstein which followed it, is consistent with our decision in People v. Dentine (21 N Y 2d 700, mot. for rearg. den. 21 N Y 2d 1040, cert. den. 393 U. S. 967). In that case, the police, while engaged in an illegal search of the defendant’s apartment, admitted a caller who, upon interrogation, gave information concerning a woman upon whom defendant had performed two abortions and whose subsequent testimony led to defendant’s indictment. The Appellate Division reversed an order of suppression and we affirmed, without opinion. It is to be noted that our decision granting a subsequent motion to amend the remittitur stated that we had “ concluded that there was no denial of defendant’s rights since *100 the connection between the search and the testimony was ‘ so attenuated as to dissipate the taint ’ (Nardone v. United States, 308 U. S. 338, 341) ” (21 N Y 2d 971, 972).
Closely analogous, too, is our decision in People v. Portelli (15 N Y 2d 235, cert. den. 382 U. S. 1009) in which we held that the trial court was not required to exclude testimony implicating the defendant, given by a witness from whom the information had been coerced by police brutality. We said (p. 239): “ Testimony given from the witness stand by a witness who was, some eight months earlier, compelled by police brutality to give a statement implicating a defendant stands on a footing very different from an out-of-court confession coerced from a defendant and sought to be used against Mm on the trial. While the latter will be excluded as a matter of law, the testimony of a witness who, although previously forced to make a pretrial statement, asserts that his testimony at the trial is truthful is for the consideration and appraisal of the jury.” Indeed, it may well be asked whether exclusionary rules of this nature, while fully effective as respects parties, should ever be applied to living witnesses, with consequent destruction of evidentiary sources, by whatever means exposed. Affirmance in this case, however, does not require resort to so broad a rule.
In announcing the basis of our decision, it should first be noted that the case is not concluded by the stipulation to which we have alluded, whereby the prosecutor stated that the complainant “whose affidavit was attached to the search warrant which forms the basis of [the suppression] motion was known to and gotten to by the Police Department solely through [an invalid] wiretap ” and “ further stipulated] that without said wiretap we would never have known [of her] existence ”, The first part of this two-pronged stipulation was, of course, appropriate, as a statement of a present, known and existing fact and was properly received in lieu of testimony of that character. The “further” stipulation was not within counsePs competence, dealing, as it does, with possibilities or probabilities which never had to be tested, rather than with fact. Additionally, to give full effect to the stipulation would not of necessity conclude the case. To repeat: “We need not hold that all evidence is ‘ fruit of the poisonous tree ’ simply because it would not have come to light but for the illegal actions of the *101 police.” (Wong Sun v. United States, 371 U. S. 471, 487-488, supra; emphasis supplied.)
It seems reasonably clear that it was probable or at least possible that lawful surveillance of the suspected defendant, without the information acquired by the wiretap, would have led the police to the witness in any event. In such a case the earlier, fortuitous discovery of a witness, during an illegal phase of a general investigation, should not render the witness’ testimony unavailable in every circumstance. Here, as previously noted, defendant did, in fact, go to the witness’ home to perform the abortion and the police followed her there.
If there was or might otherwise have been a chain of causation leading from the wiretap to the complainant’s affidavit, it was attenuated by intervening acts and forces: The surveillance which led, not to contraband or other real evidence, but to a witness, a further and independent volitional source of information— a source which became productive only upon the application of additional, interacting forces to be found in the personality and character of the witness and, perhaps, in the intelligence and skill of her questioners; all of which were exerted without confrontation of the witness with the fact of the wiretap or by like exploitation of the illegal act.
The judgment should be affirmed.
Chief Judge Fuld and Judges Scileppi, Bergan, Breitel and Jasen concur; Judge Burke taking no part.
Judgment affirmed.

. See 28 A D 2d 727; 31 A D 2d 832.

. See 35 A D 2d 606.

. Also distinguishable is United States v. Edmons (432 F. 2d 577) where the indisputable exploitation was not only the result of the illegal arrest but its very purpose.