Rabin, J.
This is an appeal from a judgment of the County Court of Dutchess County, rendered December 8, 1975, convicting the defendant, upon his plea of guilty, of the crime of sexual abuse in the first degree, in full satisfaction of an indictment which charged him with sodomy, rape and various degrees of sexual abuse. The appeal brings up for review, inter alia, the denial of the branch of defendant’s motion which sought to suppress, on the ground of an illegal search and seizure, "any and all testimony” flowing from the observations of a New York State Police Investigator, made while on the defendant’s property. For the reasons set forth below, we reverse the judgment, vacate the plea, grant the branch of the motion to suppress as above stated and remand the case to the County Court for further proceedings not inconsistent with the views expressed herein.
Over the course of a year and a half, several patients of the defendant, a doctor, made complaints to the District Attorney’s office alleging sexual misconduct on the defendant’s part *501 during the course of regular gynecological examinations. Pursuant to these complaints an investigation was undertaken in which the defendant’s office was visited by an undercover policewoman posing as a patient. Her purpose was to survey the inner offices while a police investigator entered the rear yard of the defendant’s premises and stationed himself outside of the building in a position to view the policewoman as she entered one of the examination rooms. To obtain such a view the investigator was required to climb a seven-foot ladder and peer through the exposed portions of heavily curtained windows. The investigator stated in his affidavit that, while he was so positioned, he was able to observe the undercover policewoman, that he was able to observe another examining room in which a female was lying on an examination table and that he witnessed certain acts of sexual misconduct committed upon the female patient by the defendant. It is conceded that no search warrant was obtained by the police before undertaking the course of events described above.
After he was indicted, the defendant moved, inter alia, to suppress all evidence flowing from the police investigator’s observations on the ground that they constituted a warrant-less search by the police investigator, and were, therefore, unlawful. The County Court denied that branch of the motion, finding that the protection of the undercover policewoman from possible danger while inside the defendant’s office justified the presence of the police investigator and that, since his presence was thus justified, his observations of criminal conduct were admissible as having occurred within the officer’s plain view.[1] We reject such a conclusion and hold that the search as conducted was unlawful and that the testimony directly flowing therefrom must be suppressed.
We first note that whether the police have conducted a search within the meaning of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the area is one in which there is a reasonable *502 expectation of freedom from governmental intrusion (Katz v United States, 389 US 347, 352). Undoubtedly, a doctor’s office is such an area (Mancusi v De Forte, 392 US 364). Consequently, the failure by the police to obtain a search warrant before the police investigator’s trespass onto the defendant’s premises may not be lightly excused (see Coolidge v New Hampshire, 403 US 443, 454; Chimel v California, 395 US 752, 762). Thus, "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.’ The exceptions are 'jealously and carefully drawn,’ and there must be 'a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.’ '[T]he burden is on those seeking the exemption to show the need for it’ ” (Coolidge v New Hampshire, supra, pp 454-455). Those exceptions generally stem from the exigencies of law enforcement or involve situations in which compliance with the rule would be "mere ritual” (Ker v California, 374 US 23, 38-41).
We find on this record no exigencies of law enforcement which would justify the police investigator’s initial entry without a warrant. Even assuming that the safety of the undercover policewoman required surveillance, the investigation which led to the police trespass was not sudden but stemmed from complaints as far back as a year and a half before the incident in question. The investigator’s entry onto the defendant’s premises was not incident to a lawful arrest (see Chimel v California, supra). The investigator was neither engaged in hot pursuit (see Warden v Hayden, 387 US 294) nor motivated by the need to prevent loss of evidence (see Schmerber v California, 384 US 757). Furthermore, to argue, as the People do, that the investigator’s observations come within the "plain view” doctrine is to ignore the underlying presumption that the viewing officer had a right to be in a position to have had that view (see Harris v United States, 390 US 234). But having failed to obtain a warrant where no exigent circumstances were present, the investigator’s position in the defendant’s backyard was unlawful, thereby rendering his "plain view” constitutionally infirm.
The dissenters, however, are of the opinion that the observations of the police investigator of an independent crime, unrelated to his original purpose and not induced by his *503 presence, are admissible. This raises the question "whether, granting the primary illegality, the evidence to which objection is made has been discovered by exploitation of that illegality or, instead by means sufficiently distinguishable to be free of the primary taint—whether the connection between the primary illegality and the evidence in question is so 'attenuated’ as to dissipate the taint” (see People v Mendez, 28 NY2d 94, 97). This question must be answered in the negative.
We must keep in mind the rationales which require application of the exclusionary rule in the first place, those of "deterrence” and "judicial integrity”.[2] Certainly not all evidence is "fruit of the poisonous tree” and therefore necessarily inadmissible, simply because it would not have come to light but for the illegal actions of the police (Wong Sun v United States, 371 US 471, 487-488). The taint of initial illegality may be purged by an intervening independent act which breaks the causal chain linking the illegality and the evidence in such a way that the evidence is not in fact obtained by "exploitation of that illegality.” In applying these maxims to the appeal at bar, we hold that the independent act of the defendant in engaging in a course of criminal conduct not anticipated by the trespassing investigator, is outweighed by the severity of the constitutional violation inherent in the initial abuse of the defendant’s reasonble expectation of privacy (cf. Katz v United States, supra). This kind of search conducted by the police investigator without a warrant, must be declared to be invalid in all respects. To grant suppression of the fruits of the search as to matters sought, but admit fruits of the search as to matters not sought, would do irreparable damage to the constitutional protections afforded by the Fourth Amendment. The prosecutorial benefits of such *504 a serious constitutional violation as presented herein must be denied, and the "’imperative of judicial integrity’” demands that this court not be made "party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions” (Terry v Ohio, 392 US 1, 12, 13).
It should be noted that our decision today has neither the intention nor the practical effect of insulating defendants from evidence of criminal activity directed toward a trespassing police officer. In all cases cited by the dissent in support of its independent crime theory, the independent crime was directed toward the police officer himself. As to those kinds of crimes, the testimony of the police officer is undoubtedly admissible, for the Fourth Amendment is not a vehicle for license to commit crimes against or through the police, regardless of where such crimes occur. Rather, the Fourth Amendment demands that the State shall not benefit by the use of evidence unlawfully obtained.

. The County Court made its determination solely on papers. On appeal the defendant raises, as one of his arguments, the existence of gaps and inconsistencies in the record which would necessitate, if not a reversal of the conviction, at least a hearing on the suppression motion. In particular there is asserted a critical disparity in the time at which the investigator claimed he witnessed the undercover policewoman in the defendant’s office and the time at which the undercover policewoman was supposed to have left the premises according to the defendant’s office time records. However, because we find that the investigator’s observations were unlawful, even under cricumstances most favorable to the People, no hearing is necessary.

. When called upon to evaluate the merits of an argument against suppression on the ground that deterrence of police conduct would not be achieved, Mr. Justice Stewart noted, in Harrison v United States (392 US 219, 224, n 10), that "no empirical evidence on the deterrence issue is available. And '[s]ince as a practical matter it is never easy to prove a negative, it is hardly likely that conclusive factual data could ever be assembled.’ Elkins v United States, 364 US 216, 218. But it is not deterrence alone that warrants the exclusion of evidence illegally obtained—it is 'the imperative of judicial integrity.’ Id., at 222.” The Justice went on to note that exclusion of the illegally obtained evidence and testimony flowing therefrom "deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime. On the contrary, the exclusion of evidence causally linked to the Government’s illegal activity no more than restores the situation that would have prevailed if the Government had itself obeyed the law” (Harrison v United States, supra, p 224, n 10).