Fuchsberg, J.
(concurring). I too would uphold the defendant’s conviction for all the fruits of the unlawful arrest — the knife, the money, the food stamps and the postarrest showup identification — were suppressed (People v Mendez, 28 NY2d 94, cert den 404 US 911; People v Graham, 39 NY2d 775; cf. United States v Crews, 445 US 463, 474).*
But I cannot subscribe to such vague and overgeneralized declarations as, for instance, the one that, in applying the exclusionary rule, courts are to weigh “the societal cost of losing reliable and competent evidence” against “the probable effectuation and enhancement of Fourth Amendment principles” (p 425). Nor do I subscribe to the court’s related discussion of this subject. Effective enforcement of our Constitutions, Federal and State, would soon be undermined if subjected to the vagaries of such a case-by-case balancing act.
A more overriding consideration is the rule’s role in vindicating the integrity of our government in general and of the judicial process in particular. It is long recognized that, lacking this “imperative of judicial integrity” (Elkins v United States, 364 US 206, 222), “ ‘[i]f the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself’ ” (Mapp v Ohio, 367 US 643, 659, quoting Justice Brandéis’ fundamental declaration in Olmstead v United States, 277 US 438, 485).
That these observations are not only conceptual but pragmatic is borne out by the fact that empirical studies thus far have failed to support the hypothesis that the detection or prosecution of crime will be advanced in any meaningful degree by emasculating the exclusionary rule (see Geller, Enforcing the Fourth Amendment: The Exclusionary Rule and Its Alternatives, 1975 Washington U LQ 621; Critique, On the Limitations of Empirical Evaluations of the Exclusionary Rule: A Critique of the Spiotto *429 Research and United States v Calandra, 69 NW U L Rev 740; also cited in Geller, Is the Evidence in on the Exclusionary Rule?, 67 J ABA 1642 [Dec., 1981]). It follows that unnecessary or cavalier disregard of the high principle at stake is hardly in order.
It therefore is of even more than passing significance that two of the five Judges who joined in the court’s opinion, including myself, believe, that “the proscription of the Fourth Amendment, and thus the constraint of its associated exclusionary rule” is a matter entirely “irrelevant” to the decision of this , case (p 424).

 As to the prejudicial inferences which the dissenter would draw from the testimonial excerpts he quotes, I respectfully venture the view that these reflect the rationalizations of a studied judicial hindsight rather than the realism of the transitory and more literal impression a lay jury would gather. A good gauge is that defendant himself found no need either to object or to seek corrective action.