■ The People of the State of New York, Respondent, v Angie Codina, Appellant. [972 NYS2d 247]—

Judgment, Supreme Court, New York County (Lewis Bart Stone, J.), rendered June 24, 2004, as amended July 29, 2004, convicting defendant, after a jury trial, of scheme to defraud in the first degree, grand larceny in the third degree (10 counts), grand larceny in the fourth degree, and practicing or appearing as an attorney-at-law without being admitted and registered (12 counts), and sentencing her to an aggregate term of 5 to 15 years, unanimously affirmed.

Defendant is an attorney licensed in Canada who founded and operated a law firm called Codina Partners International (CPI). In 1996, defendant opened an office in Manhattan to handle immigration matters. Defendant has never been a member of the bar of New York or of any other state of the United States. The complainants are former clients of CPI who visited CPI's New York office, and subsequently retained the firm, between January 4, 1996 and February 28, 1999, in connection with their efforts to obtain documents necessary for them to legally live and work in the United States or Canada. The clients all testified at trial that they retained CPI based on their belief that defendant was licensed to practice law in New York. They further testified that they never received the services they paid for and did not

receive the refunds that they demanded. After several of the complainants reported defendant to the police and the Departmental Disciplinary Committee, the New York Attorney General (AG) opened an investigation.

The AG executed a search warrant and seized defendant's office files. Defendant was subsequently charged in three indictments, covering crimes including grand larceny, scheme to defraud, and the unlicensed practice of law (28 counts in total). Although the AG acted on the matter as early as March 1998, it was not until February 4, 1999 that the New York State Police formally requested the AG to act, which gave the latter jurisdiction pursuant to Executive Law § 63 (3). Thereafter, the AG presented its case to a grand jury, which returned indictments against defendant.

At her first trial, defendant conceded that she was not admitted to practice law in New York or in any other state and that although she had been admitted as a barrister and solicitor in Ontario, Canada, she had been suspended after she was convicted in Ontario in 1997 of fraud and falsification of books. A jury convicted her of all but a single grand larceny count, and she was sentenced to an aggregate term of $9^1/_3$ to 28 years. This Court reversed the judgment, finding that the AG had executed the search warrant at defendant's office prior to obtaining jurisdiction under Executive Law § 63 (3). The evidence seized pursuant to the warrant was suppressed and a new trial ordered (297 AD2d 539 [1st Dept 2002], *lv dismissed* 98 NY2d 767 [2002]). However, this Court rejected defendant's argument that she was entitled to dismissal of the indictment (*id.* at 540-541). This finding was based on the grand jury's having heard testimony from former clients of CPI who appeared voluntarily.

The AG presented 15 witnesses at the retrial, all of whom had retained CPI to assist them in obtaining legal immigration status. None of the witnesses testified that defendant ever explicitly represented that she was licensed to practice law in New York, or in the United States for that matter. However, many of the witnesses testified to having learned about CPI through a newspaper advertisement bearing defendant's image and promoting her as an immigration attorney who could assist clients seeking legal status in the United States and Canada. Most of the witnesses further stated that when they first appeared for their appointments at CPI they saw a sign on the door of the office, which they variably described as identifying the office as belonging to "Codina Partners International, attorney-at-law," "Angie Codina, attorney-at-law, Codina Partners International," "Codina, attorney-at-law, law ser-

vices," or "Codina Partnership, Law Office." Most of the witnesses claimed that defendant assured them that she would achieve the result they desired and then refused to refund their money when they demanded it. They all testified that they would not have retained CPI if they had known Codina was not licensed in New York.

Also testifying for the AG was Richard Friedman, an investigator, who stated that defendant first came to his attention in November of 1997 when one of CPI's clients filed a complaint with the AG. Friedman testified that he visited CPI's office, where the sign read, "Codina Partners International Limited, Attorneys At Law." During his investigation, he learned that defendant was not admitted to practice law in the United States, but that two or three of her employees were members of the New York bar. He stated that in March 1998 he executed a search warrant at CPI's office and seized computers and boxes of client files. Friedman reviewed the materials and found no evidence that the United States or Canada had approved any of the immigration applications of defendant's clients. One of the advertisements in the materials contained a photograph of defendant, indicated that she was licensed to practice law in Canada, and provided a "generic reference" to attorneys at defendant's firm and where they were admitted.

Defendant testified that she was a Canadian immigration attorney who built an international practice under the CPI name, including opening a New York office in 1996 with 20 employees. She stated that the New York office handled immigration cases exclusively, for clients seeking legal status in either the United States or Canada, although the vast majority of the applications were for Canadian immigration. Defendant conceded that she was not admitted to practice in New York, and did not practice in the New York State courts, but stated that the office in New York employed four attorneys admitted to practice in New York.

Defendant testified that the sign on her office front door read, "Codina Partners International, attorneys at law," and that she used a "standard" advertisement to promote CPI's services that was translated into various languages and placed in a number of publications. The ad stated that the firm specialized in immigration to the United States and Canada, listed the specific areas of CPI's immigration practice, identified CPI's various offices, and contained a photograph of defendant, which included a statement identifying her as a "barrister, solicitor, or attorney at law in Canada." The ad also described her work in Canada, and stated that she was licensed to practice in Canada. Defendant stated that the ad said nothing "about the practice of law in

New York." She acknowledged that the ad did not contain a disclaimer that she was unlicensed in New York or that she was admitted only in Canada, but noted that her profile mentioned her experience and credentials in Canada.

Defendant acknowledged that nothing in the CPI retainer agreement indicated that the client understood that defendant was not an attorney admitted to practice in New York. However, she testified that she never "expressly misrepresented" that she was licensed to practice in New York, and claimed that her status in New York was "irrelevant" to her immigration practice.

Trial evidence is legally sufficient to support a conviction if, viewed in the light most favorable to the People, it could lead a rational jury to find the defendant guilty beyond a reasonable doubt (*see People v Danielson*, 9 NY3d 342, 349 [2007]). A jury's verdict is supported by sufficient evidence if the evidence presented supports "any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). A weight of the evidence review requires a court "first to determine whether an acquittal would not have been unreasonable" (*see Danielson*, 9 NY3d at 348). If such a determination is made, the court "must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (*id.*). The court then decides based on the weight of the credible evidence whether the jury was justified in finding defendant guilty beyond a reasonable doubt (*id.*). The reviewing court should afford "great deference to the fact-finder's opportunity to hear testimony and observe demeanor" (*People v Walcott*, 88 AD3d 517, 517 [1st Dept 2011]).

To establish that defendant committed the crime of larceny by false pretenses, the AG was required to provide evidence proving that the defendant (1) obtained title or possession of money or personal property of another, (2) by means of an intentional false statement, (3) concerning a material fact, (4) upon which the victim relied in parting with the property (*see People v Drake*, 61 NY2d 359, 362 [1984]). The false statement need not be explicit (*see People v Norman*, 85 NY2d 609, 625 [1995]; *People v Rohrberg*, 22 AD3d 421, 422 [1st Dept 2005], *lv denied* 6 NY3d 852 [2006]). With respect to the crime of scheme to defraud in the first degree, the AG was required to prove that defendant "engage[d] in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by

false or fraudulent pretenses, representations or promises, and so obtain[ed] property with a value in excess of one thousand dollars from one or more such persons" (Penal Law § 190.65 [1] [b]).

Viewing the evidence in the light most favorable to the AG, as we must (*People v Contes*, 60 NY2d 620, 621 [1983]), we find that the evidence was sufficient to convict defendant. It was not unreasonable for the jury to have concluded that by promoting herself in an advertisement as being a lawyer specializing in immigration, and having an office in New York, defendant intended to signal that she was licensed to practice in New York. That some of the lawyers working in the office were admitted in New York is of little moment, since defendant traded almost exclusively on her own reputation and expertise in seeking to attract clientele. Further, the fact that defendant's advertisements made clear that she was admitted to practice in Canada did not preclude the possibility that a client would reasonably believe that she was also admitted in New York, but found it unnecessary to publicize that fact based on her location in Manhattan.

It was also not irrational for the jury to conclude that defendant had an economic motive for concealing her lack of a New York license, despite the fact that such a license was not necessary to process her clients' immigration applications. Aside from the cachet that prospective clients would have attributed to having a lawyer who was a member of the New York bar, the jury could have concluded that CPI's clients valued the fact that the attorney they retained was subject to the jurisdiction of local disciplinary authorities if they were unsatisfied with defendant's work (as many of them were). Indeed, it is clear that CPI's clients placed a large premium on defendant's bar status, given that each of them testified that they would not have retained the firm had they known that defendant was not admitted to practice in New York.

Although our conclusion that defendant deceived her clients is based partially on the fact that her advertisements, retainer agreements and other documents failed to disclose that she was not admitted in New York, we note that those documents were not available for our review. That is because the AG inadvertently lost its files. Defendant maintains that the trial transcript, without the documents, contains sufficient information for us to conclude that the relevant documents were not likely to deceive a reasonable person into believing that she was a member of the New York bar. However, she posits that if we reject that conclusion we are nonetheless required to reverse her conviction

because the witnesses' descriptions of the documents were not sufficient to establish the converse proposition—namely, that the documents were likely to lead a reasonable person to conclude that she was admitted in New York. She claims that without the exhibits we are incapable of conducting a meaningful appellate review.

We disagree. First, it is incongruous for defendant to argue that the testimony regarding the documents was clear enough to acquit her, but not clear enough to convict her. In any event, defendant has not specifically demonstrated how a review of the documents would add to the information that we already know based on witness testimony. Also, because there is no basis to conclude that "the case was 'so wholly or largely dependent upon documentary evidence that there would be no proof and could be no judgment without the documents,' " a reversal based on the AG's loss of its file is not necessary (*People v Yavru-Sakuk*, 98 NY2d 56, 59 [2002], quoting *People v Strollo*, 191 NY 42, 66 [1908]). Indeed, we are able to discern from the witnesses' testimony in the record that the conviction was based on legally sufficient evidence and was not against the weight of the evidence.

Defendant makes several other arguments which she maintains warrant reversal. First, she claims that the indictments should be dismissed, regardless of the evidence against her, based on the AG's procedural error, which led to our reversal of her initial conviction. However, under the law of the case doctrine, an appellate court's resolution of an issue on a prior appeal is binding on the trial court, as well as on the appellate court, and operates to foreclose reexamination of the question absent a showing of subsequent evidence or change of law (*see Kenney v City of New York*, 74 AD3d 630, 630-631 [1st Dept 2010]; *Board of Mgrs. of the 25 Charles St. Condominium v Seligson*, 106 AD3d 130, 135 [1st Dept 2013]). In the prior appeal, this Court expressly rejected the argument that the indictments should be dismissed. Defendant has failed to show that the prior ruling was manifestly erroneous. Contrary to defendant's position, while the files themselves were properly suppressed, this Court was not required to exclude the grand jury witness testimony of witnesses whose identities were derived from those files as fruit of the poisonous tree. The AG's seizure in violation of the Executive Law was not a constitutional violation giving rise to the operation of that principle (*see Wong Sun v United States*, 371 US 471, 484-485 [1963]), especially since the witnesses testified voluntarily (*see People v Mendez*, 28 NY2d 94 [1971], *cert denied* 404 US 911 [1971]).

Further, unlike in the cases relied on by defendant holding that dismissal of an indictment is required where the AG lacked statutory jurisdiction to prosecute because of the absence of a referral, here the AG obtained the requisite section 63 (3) referral before presenting the case to the grand jury. In addition, defendant's claim that the Judiciary Law counts based on practicing law without a license should be dismissed because they concern matters over which the referring agency, the State Police, has no authority, is without merit. The Division of State Police has general authority to execute all laws within the State of New York (*see* Executive Law § 223 [1]), and violations of Judiciary Law § 478 therefore relate to "matters connected with" the Division so as to make the referral effective (*see* Executive Law § 63 [3]).

Defendant also contends that she was deprived of her right to counsel because the trial court denied her day-of-trial motion to reassign trial counsel. Instead, the court offered her the option of proceeding pro se, or continuing with assigned counsel on the condition that she waive her right to seek a declaration that counsel's assistance was ineffective because he refused to pursue her position that the indictments were invalid, and on the condition that she drop her insistence on counsel filing a speedy trial motion that he believed to be meritless. Defendant contends that she did not make a true voluntary waiver of counsel, and that the court failed to conduct the requisite "searching inquiry" to determine that she had accepted the risks of proceeding pro se.

Where a defendant requests the assignment of new counsel, the court must exercise its discretion to determine if "good cause" exists by considering whether counsel is reasonably likely to afford a defendant effective assistance and whether the defendant has unduly delayed in seeking a new assignment (*see People v Smith*, 18 NY3d 588, 592-593 [2012]). A conflict of interest or other irreconcilable conflict with counsel may be good cause for a substitution, but courts have upheld refusals to assign substitute counsel where "tensions between client and counsel on the eve of trial were the precipitate of differences over strategy or where a defendant was guilty of delaying tactics" (*id.* at 593 [internal quotation marks omitted]). To be effective, a defendant's waiver of the fundamental right to counsel must be unequivocal, voluntary and intelligent, and trial courts should undertake a sufficiently searching inquiry to be reasonably certain that a defendant appreciates the dangers and disadvantages of giving up that right (*see People v Smith*, 92 NY2d 516, 520 [1998]).

Here, the trial court providently exercised its discretion in refusing to grant defendant's untimely motion to substitute counsel, based on its finding that counsel was an experienced attorney who was prepared for trial and that the motion was an attempt to delay the trial. Further, the record does not support defendant's claim that her choice to proceed pro se was involuntary because the court had imposed conditions on the option to proceed with counsel. Although the court told defendant that if she wanted counsel to represent her, she had to withdraw her ineffectiveness claims, defendant ultimately chose self-representation voluntarily, after counsel refused to file motions that he deemed frivolous and refused to subpoena witnesses he considered unhelpful.

In addition, the court's requirement that defendant withdraw her allegations of ineffectiveness was not constitutionally offensive, and was necessary to prevent defendant from strategically introducing error into the trial. As noted by the AG, the court's refusal to permit defendant to proceed with counsel and at the same time accuse him of ineffectiveness was merely an effort to thwart defendant's attempt at gamesmanship. Given the record above, the court's inquiry into whether defendant, who was a Canadian lawyer, appreciated the risks of giving up the right to counsel was sufficient. The court reminded her of those risks and she acknowledged them, but opted to represent herself because of the strategic differences she had with counsel.

Defendant further asserts that she was denied her constitutional right to present a defense because the court refused to admit evidence of her successes on behalf of satisfied clients, precluded the admission of legal opinions stating that immigration practice is not legal practice, and precluded evidence regarding the AG's purported lack of jurisdiction. Defendant argues that evidence of her successes would have shown that the prosecution's witnesses were a small number of dissatisfied customers and that there was a far larger number of satisfied customers, which would have undermined the prejudicial impression that she and CPI made numerous errors on behalf of clients. This position lacks merit. Evidence that defendant had many satisfied customers was not relevant to the question of whether she stole from and defrauded the identified clients. Since the proffered evidence did not support any valid defense, its exclusion did not impair defendant's right to present a defense (see People v Schlick, 45 AD3d 436 [1st Dept 2007], lv denied 10 NY3d 771 [2008]).

The court correctly excluded legal opinions holding that immigration practice was not the practice of law. The matter is a

question of law to be decided by the court and charged to the jury, not a question of fact to be proven by the parties through the introduction of evidence. Defendant failed to preserve her claim with respect to the exclusion of evidence relating to the AG's purported lack of jurisdiction to bring the indictments. In any event, as discussed above, the ruling was dictated by the law of the case. The court's preclusion of the testimony of another CPI attorney was appropriate. Further, while defendant challenges the preclusion of a Labor Department application submitted by another CPI attorney on behalf of a client, it appears that the application was ultimately admitted into evidence. We reject defendant's arguments regarding her attempt to introduce evidence of successful visa applications made on behalf of clients, as well as the outcome of civil suits brought by her clients, since the proffered evidence was not relevant. Defendant's other claims asserting improper exclusion of certain proffered evidence are unpreserved, and we decline to review them.

We reject defendant's claim that the court improperly instructed the jury that the false material statement required to support the crimes of scheme to defraud and grand larceny could be "express or implied." As previously noted, larceny by false pretenses may be committed through an express or implied misrepresentation (see Norman, 85 NY2d at 625). While there is no question that the court erred in instructing the jury that the scheme to defraud count required the deception of "one or more persons," the claim is unpreserved and we decline to review it. Moreover, the error was harmless. The jury convicted defendant of all eleven counts of grand larceny, each of which was necessarily based on defendant's having intentionally stolen property from at least eleven people through false representations about her legal credentials. Given that, there is no reasonable possibility that the jury convicted defendant of scheme to defraud based on her intent to defraud, or to obtain property from, only one person.

Nor is reversal warranted by comments made by the court during the trial or by the prosecutor during summations, most of which were made outside the presence of the jury. To the extent the court intervened or made arguably disparaging remarks in the presence of the jury, its conduct did not improperly interfere or pervasively denigrate defendant and her arguments so as to deprive her of a fair trial. Defendant's objections to the AG's summation were unpreserved. Furthermore, the statements were either fair comments on the evidence or within the permissible bounds of rhetorical expression.

Finally, there is no merit to defendant's argument that the unauthorized practice of law counts must be dismissed as duplicitous because they allege two distinct crimes: holding herself out as an attorney and practicing as an attorney without being licensed in New York. Acts that separately and individually make out distinct crimes must be charged in separate and distinct counts, "and where one count alleges the commission of a particular offense occurring repeatedly during a designated period of time, that count encompasses more than one offense and is duplicitous" (*People v Keindl*, 68 NY2d 410, 417-418 [1986]). However, "[t]he conviction upon a count of an indictment that is originally duplicitous does not mandate reversal if the deficiency is ultimately cured" (*People v Retti*, 224 AD2d 333, 334 [1st Dept 1996], *lv denied* 88 NY2d 940 [1996]).

Here, defendant argued before and during trial that the unauthorized practice of law counts were duplicitous because they alleged both "holding out" and "practicing" without a license. However, in its charge regarding the alleged violations of Judiciary Law § 478, the court instructed the jury to consider only whether defendant had held herself out as a New York attorney without being licensed and admitted in the State. Thus, even if the counts as alleged in the indictment were duplicitous, the instructions of the court cured that deficiency. Concur—Mazzarelli, J.P., Renwick, Manzanet-Daniels, Gische and Clark, JJ.