In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3245

TYRONE L. JONES,

*Petitioner-Appellant,*

*v.*

RICHARD BROWN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:11-cv-205-WTL-WGH — **William T. Lawrence**, *Judge.*

ARGUED FEBRUARY 19, 2014 — DECIDED JUNE 24, 2014

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* After a bench trial, Tyrone L. Jones was convicted of felony murder in an Indiana trial court. His conviction was affirmed on direct appeal. He then filed a petition for postconviction relief in state court, alleging ineffective assistance of trial counsel. Specifically, he contended that his trial counsel had been ineffective for failing to seek the suppression of clothing that Mr. Jones had given to the police after his arrest. Mr. Jones contended that the clothing had been

obtained in violation of *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975), which, at least under some circumstances, requires that a detainee be advised of his right to counsel prior to consenting to a search of his property. The state trial court denied postconviction relief; the Court of Appeals of Indiana affirmed that judgment, and the Supreme Court of Indiana denied transfer.

Having exhausted his state remedies, Mr. Jones sought federal habeas relief under 28 U.S.C. § 2254. He reiterated the same claim of ineffectiveness of counsel that he had presented to the state courts. The district court denied relief. We now affirm that judgment because trial counsel was not constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).

# I

## BACKGROUND

### A.

The Court of Appeals of Indiana summarized the facts underlying Mr. Jones's conviction as follows:

> In February 2002, Sam Alexander lived at the Lamplighter Apartments in Indianapolis. Alexander was fifty-five years old and weighed approximately 138 pounds. He walked with a limp and suffered from emphysema. Alexander and Jones used drugs together on occasion. In February 2002, Jones was thirty-three years old and weighed 230 pounds.

During the weekend of February 8, 2002, Jones
and Annissa Harris were getting high on crack
cocaine at Alexander's apartment. At some point,
Alexander asked Jones and Harris to leave, and
Harris left. Harris later saw Jones carrying Alex-
ander's television, and when she inquired what
Jones was doing with it, he stated that Alexander
had "pawned it to him." Jones sold the television
to a friend of Robert Crabtree. Crabtree and
Harris both lived across the street from Alexan-
der's apartment.

Harris went back to Alexander's apartment
that night, and although she saw someone look-
ing through the peephole of the door, no one
answered. When she returned the next day, the
door was locked and, again, no one answered.
On Sunday, February 17, 2002, after noticing that
Alexander's apartment lights were on all the
time, Harris returned to Alexander's apartment
with a friend. When she and her friend
approached Alexander's door, they both smelled
"a foul odor." Later that evening when she saw
a police officer, Harris asked the officer to check
on Alexander. At some point that weekend,
Jones called Crabtree and asked him if he had a
valid identification because Jones wanted to
pawn a microwave.

Indianapolis Police Officer Stephen Hart ar-
rived at Alexander's apartment and noticed a

> foul odor. When he could not gain entry into the apartment, he called for the fire department to bring a ladder. Once firemen arrived, they gained entry into Alexander's apartment through the back door. They discovered Alexander's body on the floor. His hands had been tied behind his back, his feet tied at the ankles, and a piece of cloth had been tied over his mouth as a gag. Alexander's body was in an advanced stage of decomposition.
>
> … .
>
> During a police investigation, Harris identified Jones as the person who had been in Alexander's apartment when she had last seen Alexander alive.[1]

Indianapolis Police Detective Charles Benner later discovered that Mr. Jones was wanted on three outstanding warrants. The police located Mr. Jones, arrested him and brought him to police headquarters on April 10, 2002.

> Jones signed a form dated April 10, 2002, that contained an "ADVICE OF RIGHTS" and "WAIVER OF RIGHTS." Detective Benner interviewed Jones and noticed that the soles of his shoes appeared to be the same shoe print that he saw on a pillowcase. Detective Benner asked if he could take Jones's

---

[1] *Jones v. State*, No. 49A02-1006-PC-687, 2011 WL 684625, at *1-2 (Ind. Ct. App. Feb. 28, 2011) (quoting *Jones v. State*, No. 49A02–0305–CR–416, slip op. at 2-4 (Ind. Ct. App. Feb. 11, 2004)).

clothing and shoes, and Jones said yes. The police also interviewed Jones twice on April 11, 2002, and Jones gave two statements.

In his first statement, Jones admitted that he had spent the weekend of February 8 at Alexander's apartment. He denied that he had taken any of Alexander's things and claimed he did not know what had happened to Alexander.

In his second statement, however, Jones stated Alexander had agreed to give Jones his television in exchange for drugs. According to Jones, at some point, Alexander wanted more drugs, became angry and came at him with a pocketknife. Jones stated that he pushed Alexander, that Alexander's head hit the wall, and that Jones then hit him in the head with his fists a few times. Alexander was unconscious, and Jones stated that he gathered his things and left. He then returned and took the television. He stated that he returned a third time and decided to bind Alexander's hands and feet and gag his mouth. He stated that he sold the television to a man who lived across the street from Alexander but denied taking the microwave.[2]

---

[2]  *Id.* at *2 (quoting *Jones*, No. 49A02-0305-CR-416, slip op. at 4-5) .

**B.**

A few days after the interview, the State charged Mr. Jones with murder, felony murder, robbery and criminal confinement. He waived his right to a jury trial and proceeded to a bench trial. Mr. Jones's counsel argued that Mr. Jones had acted in self-defense, that he had not committed the robbery and that Mr. Jones had bound Alexander because of the further threat that Alexander posed. Counsel did not move to suppress the admission of Mr. Jones's clothing items, his admissions regarding his presence at Alexander's apartment or a laboratory report tying Mr. Jones's clothing to the crime scene. Indeed, Mr. Jones's counsel and the State stipulated to the laboratory report's admissibility because, as Mr. Jones's trial counsel explained, there was no issue about Mr. Jones's presence in the apartment on the day that Alexander was killed.

The trial court found Mr. Jones guilty, merged all the counts into the felony-murder count and entered a judgment of conviction for felony murder. It sentenced Mr. Jones to sixty-five years' imprisonment.

Mr. Jones appealed his conviction. On direct appeal, he argued that the State had presented insufficient evidence for his felony-murder conviction and that the trial court had erred when it imposed sentence. The court of appeals affirmed the conviction and sentence. Mr. Jones did not seek transfer to the Supreme Court of Indiana.

Mr. Jones then filed a petition for state postconviction relief. The first petition was withdrawn and replaced with a second, pro se petition. The state trial court conducted an evidentiary

hearing on the petition, at which Mr. Jones's trial attorneys testified. At the hearing, Mr. Jones inquired whether the attorneys had considered objecting to the admission of evidence related to the seizure of his shoes on the basis of *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975). One attorney testified that,

> if they arrested you on a warrant and they took your clothes in the ordinary course of taking your clothes, uh, as part of their procedures for that, uh, it's a valid arrest under the warrant. And what they take from you as standard operating procedures incident to that arrest, uh, I don't believe that would be something that would be a problem.[3]

In questioning his other attorney, Mr. Jones asked: "Are you familiar with the laws with this state pertaining to a search for a person that's in police custody, that he must be informed of his right to consult with counsel before a valid consent can be given?"[4] The attorney responded: "That's not the law."[5] When Mr. Jones explicitly referred to *Pirtle v. State*, the attorney testified that "I think the issues … whether or not a person has been advised of that is relevant to that decision, but it's not a requirement in our state."[6] He later said that, to his recollec-

---

[3]  Postconviction Tr. 54.

[4]  *Id.* at 143.

[5]  *Id.*

[6]  *Id.*

tion, he did not object to the shoes because Mr. Jones "w[as]n't denying that [he]'d been there at the fellow's apartment."[7]

At the hearing, Mr. Jones also questioned Detective Benner about his initial encounter with Mr. Jones after he was arrested. Detective Benner stated that, at that time, he requested Mr. Jones's shoes because he had observed that the print on the bottom of the shoes appeared to match a print that he had seen in photographs of the crime scene. According to Detective Benner's testimony, he asked "if [he] could have the shoes, and [Mr. Jones] said, yeah, no problem."[8]

Mr. Jones also elicited testimony from Detective Benner about his attempts to obtain a statement from Mr. Jones:

> Q: And the day that you recovered my shoes I didn't want to make a taped statement, did I?
>
> A: You said you were tired. You asked me to come back and get you the next day.
>
> Q: On the day, on, on that day during our conversation, didn't I basically tell you I didn't know what happened to Sam, never saw Sam again, and denied being at the, at the scene?
>
> A: You said that you were at the scene. You said you weren't at the scene when he was killed … .
> … .

---

[7]  *Id.* at 159.

[8]  *Id.*

Q: Okay. The next day after testing my shoes for blood didn't you come back to, to tell me the things you knew?

A: The tests for your shoes didn't come back for quite a bit longer, but, no, I did tell you some of the things I knew in order to get you to tell me the truth, yes.[9]

As the hearing was concluding, Mr. Jones offered testimony on his own behalf. He stated:

[T]he day that I was arrested, two months had already elapsed between my arrest and Mr. Alexander's death. And when I was taken to downtown headquarters, though I was Mirandized, I was not informed of my right to confer with counsel about the possibility of consenting to, you know, before consenting to a search, you know, and my shoes being, and clothing being tested, you know, for blood. I also believed that because my … shoes were taken in violation of my right, Fourth Amendment right, or possible Sixth Amendment right, that all the evidence learned or gained from that illegal conduct is tainted and should have been excluded.[10]

Following the hearing, the state trial court denied relief. Ruling on Mr. Jones's claim of ineffective assistance with

---

[9]  *Id.* at 236-37.

[10]  *Id.* at 261-62.

respect to counsel's failure to move to suppress Mr. Jones's items of clothing, the trial court concluded:

> 37.   During his interrogation of Jones, Detective Charles Benner sought to obtain Jones' clothing and shoes for comparison with evidence found at the crime scene. Jones voluntarily provided his shoes to the detective. He was not coerced or compelled in any fashion to surrender his shoes and clothing to Benner.
>
> … .
>
> 39.  Jones has not demonstrated that Benner seized these items in violation of either the U.S. or Indiana Constitutions.
>
> … .
>
> 87.  Moreover, as Jones willingly gave the shoes to the officer, Jones has not demonstrated that his counsel would have been successful in seeking a motion to suppress.[11]

Mr. Jones appealed to the Court of Appeals of Indiana and reiterated his claim that "his trial attorneys were ineffective for failing to file a motion to suppress evidence and for failing to object to the admission of this evidence at trial."[12] He contended that "his trial attorneys should have challenged the

---

[11]   R.23-6 (Findings of Fact and Conclusions of Law Denying Post-Conviction Relief) at 48, 57 (citations omitted).

[12]   *Id.* (Mr. Jones's postconviction brief) at 24.

admissibility of evidence based upon the legal doctrines enunciated in *Pirtle* and *Sims* [*v. State*, 413 N.E.2d 556 (Ind. 1980)]."[13] Mr. Jones pointed out that there was no question that he was in custody at the time Detective Benner requested his shoes and that he was not advised of his right to consult with counsel before surrendering his shoes. He also maintained that the search was "unlimited," and, therefore, clearly fell within the rule of *Pirtle*.[14] Finally, he urged the court to reject the State's argument that the admission of the shoes was harmless because he had not contested his presence at the scene of the crime: "[T]he theory of self-defense resulted from Jones's statements to the police. Those incriminating statements were the poisonous fruits of the illegal, warrantless seizure of Jones's clothes and shoes. Challenging the warrantless seizure of the clothes and shoes would also preclude the admissibility of the statements."[15]

In response, the State first argued that *Pirtle* did not apply because, "[w]hen a search is less invasive than an unlimited search, an officer is not required to advise a suspect of his right to consult with an attorney before consenting to the search."[16] Additionally, the State maintained that "Jones conceded that he was at Alexander's home that evening, and, thus, his

---

[13]   *Id.* at 25 (footnote omitted).

[14]   *Id.* at 27.

[15]   *Id.* at 29.

[16]   R.23-7 (State's postconviction appellate brief) at 22.

defense was not negatively impacted by any evidence related to his shoes."[17]

The Court of Appeals of Indiana affirmed the denial of state postconviction relief. It held that Mr. Jones was not prejudiced by his counsel's failure to object to the laboratory report. It stated:

> Jones appears to argue that his trial counsel was ineffective for failing to file a motion to suppress or object to the admission of his shoes and clothes. Jones argues that his trial attorneys "should have challenged the admissibility of evidence based upon the legal doctrines enunciated in" *Pirtle v. State*, 323 N.E.2d 634 (1975), and *Sims v. State*, 413 N.E.2d 556 (1980). Appellant's Brief at 18. Jones argues that "the theory of self-defense resulted from [his] statements to the police," and that "[t]hose incriminating statements were the poisonous fruits of the illegal, warrantless seizure of Jones's clothes and shoes." *Id.* at 22.

> … .

> Jones does not develop a cogent argument that the mere admission of his shoes or clothing prejudiced him. As the State points out, Jones admitted to being present in Alexander's apartment and striking him. To the extent that Jones suggests that his statements to the police claiming self-defense were the poison-

---

[17]  *Id.*

ous fruits of the seizure of his clothes and shoes, Jones does not argue that these statements were obtained as a direct result of the search of his shoes and clothing. Further, we note that the Laboratory Examination Report indicating that the DNA profile from Jones's shoe matched Alexander's DNA profile was dated February 27, 2003, well after Jones's statements to the police in April 2002. We cannot say that Jones has demonstrated that he was prejudiced by the admission of his shoes or clothing. Accordingly, his claim of ineffective assistance on this basis fails.[18]

The Supreme Court of Indiana denied transfer.

## C.

Having exhausted his available state remedies, Mr. Jones then filed a petition for federal habeas relief. *See* 28 U.S.C. § 2254.[19] He asserted, again, that his trial counsel was ineffective for "fail[ing] to try to suppress inculpatory evidence and fail[ing] to object to its admission at trial."[20] The district court concluded that the state appellate court correctly had identified *Strickland v. Washington*, 466 U.S. 668 (1984), as articulating the

---

[18]   *Jones*, 2011 WL 684625, at *9 (footnote omitted) (parallel citations omitted).

[19]   The district court had jurisdiction over Mr. Jones's habeas petition pursuant to 28 U.S.C. § 2254(a).

[20]   R.1 at 4.

governing federal constitutional principle and that it had taken "the constitutional standard seriously and produced an answer within the range of defensible positions."[21] Consequently, the court denied habeas relief and denied Mr. Jones a certificate of appealability.

Mr. Jones filed a notice of appeal and sought a certificate of appealability from this court.[22] The certificate was granted, and the case was set for argument.

## II

## DISCUSSION

### A.

We first set forth the legal principles that must govern our inquiry. We review the district court's denial of habeas relief de novo. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1167 (7th Cir. 2008). Our review of the underlying state court adjudication, however, is deferential. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a state court adjudicates a petitioner's claim on the merits, a federal court may grant habeas relief only when the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[21]  R.35 at 3, 5.

[22]  We have jurisdiction over Mr. Jones's appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a).

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, the Court of Appeals of Indiana correctly concluded that Mr. Jones's ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that (1) counsel's performance fell "outside the wide range of professionally competent assistance" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690, 694.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citation omitted) (quoting *Strickland*, 466 U.S. at 689, 687). In assessing prejudice under *Strickland*, the defendant must demonstrate that, in the absence of counsel's misstep, there is a reasonable likelihood that the result would have been different. *See Strickland*, 466 U.S. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome'"; neverthe-

less, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

Under AEDPA, however, Mr. Jones must not simply satisfy the *Strickland* standard; he also must establish that the state court's application of *Strickland* was unreasonable. As the Supreme Court has noted, this is not an easy task:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87. Similarly, we have observed that the bar for establishing the unreasonableness of a state court's application of *Strickland* "is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).

**B.**

With these standards in mind, we turn to Mr. Jones's submissions. He maintains that his trial counsel was ineffective for failing to seek the suppression of his shoes and related evidence on the basis of *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975). In *Pirtle*, the Supreme Court of Indiana

> recognized the right of those in custody to have the advice of counsel at the point where a consent to

> search is requested, and expressly and clearly imposed upon the State the burden in court of demonstrating an explicit waiver of such right as a condition to introducing the fruits of such searches.

*Sims v. State*, 413 N.E.2d 556, 559 (Ind. 1980), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 570 (Ind. 1995). Mr. Jones submits that, had his counsel objected to this evidence, then his clothing, his statements to the police and the laboratory report all would have been suppressed. Furthermore, in his view, had "the clothing, shoes, and derivative evidence" been suppressed, "there is a reasonable probability that the fact finder would have had a reasonable doubt about guilt."[23]

In reply, the State first argues that *Pirtle* applies only to requests for unlimited searches of a dwelling or automobile, not to a specific request for items of clothing. It invites our attention to a number of cases decided subsequent to *Pirtle* that appear to have narrowed considerably *Pirtle*'s application.[24] It

---

[23] Appellant's Br. 27.

[24] *See, e.g.*, *Garcia-Torres v. State*, 949 N.E.2d 1229, 1238-39 (Ind. 2011) (noting that "*Pirtle* and the ensuing cases have applied this rule only to the weightiest intrusions," observing that it "has suppressed evidence based on *Pirtle* when the police searched either a home or a vehicle" and refusing to apply the rule of *Pirtle* to requests for cheek swabs); *Datzek v. State*, 838 N.E.2d 1149, 1160 (Ind. Ct. App. 2005) (holding that *Pirtle* is not applicable to chemical blood tests); *Schmidt v. State*, 816 N.E.2d 925, 944 (Ind. Ct. App. 2004) (holding that *Pirtle* is not applicable to chemical breath tests); *Ackerman v. State*, 774 N.E.2d 970, 981-82 (Ind. Ct. App. 2002) (identifying

(continued...)

also notes that, even if there had been a misstep by counsel, the state appellate court reasonably concluded that Mr. Jones was not prejudiced by counsel's failure to move to suppress the shoes because he "admitted to being present in Alexander's apartment." *Jones v. State*, No. 49A02–1006–PC–687, 2011 WL 684625, at *9 (Ind. Ct. App. Feb. 28, 2011). Similarly, the State submits, the Court of Appeals of Indiana reasonably concluded that, "[t]o the extent that Jones suggests that his statements to the police claiming self-defense were the poisonous fruits of the seizure of his clothes and shoes, Jones does not argue that these statements were obtained as a direct result of the search of his shoes and clothing." *Id.*

Finally, the State asserts that, even without the clothing, laboratory report and statements, there was sufficient evidence to support Mr. Jones's conviction, including Detective Benner's testimony that the shoes Mr. Jones was wearing matched those at the scene, the discovery of Mr. Jones's blood inside Alexander's apartment, and the possession by Mr. Jones of Alexander's television and microwave.

### 1.

We begin by considering whether Mr. Jones's trial counsel's performance fell "outside the wide range of professionally

---

[24] (...continued)

"the purpose of the *Pirtle* doctrine" as "ensur[ing] that no person in custody consents to an *unlimited* search unless she is fully informed of the constitutional rights she is waiving" and refusing to apply the rule with respect to requests for field sobriety tests (emphasis added).

competent assistance." *Strickland*, 466 U.S. at 690. Because the Court of Appeals of Indiana did not reach this issue, there is no state-court determination to which we must defer under AEDPA, and we therefore consider the question of counsel's performance de novo. *Sussman v. Jenkins*, 636 F.3d 329, 350 (7th Cir. 2011) (stating that if the state court does not reach the merits of one prong of the *Strickland* analysis, then federal review of that prong "is not circumscribed by a state court conclusion, and our review is de novo" (internal quotation marks omitted)).

"There is no federal constitutional right to counsel before consenting to a search even if the suspect is in custody. However, *Pirtle v. State*, 323 N.E.2d 634 (1975), established that Article I, section 11 of the Indiana Constitution requires that a person in custody explicitly waive the right to counsel before giving a valid consent to a search." *Clarke v. State*, 868 N.E.2d 1114, 1119 (Ind. 2007) (citation and parallel citation omitted). "[T]he purpose of the *Pirtle* doctrine is to ensure that no person in custody consents to an *unlimited* search unless she is fully informed of the constitutional rights she is waiving." *Ackerman v. State*, 774 N.E.2d 970, 981 (Ind. Ct. App. 2002) (emphasis added). Later cases have made it clear that *Pirtle* applies "only to the weightiest intrusions"; when police have asked to conduct "minimally intrusive" searches, Indiana courts have held that *Pirtle* does not apply. *Garcia-Torres v. State*, 949 N.E.2d 1229, 1238 (Ind. 2011). Thus, the Supreme Court of Indiana has suppressed evidence based on *Pirtle* when the police have searched a home or a vehicle, but has refused "to extend that rule" to police requests for cheek swabs for the purposes of DNA testing. *See id.* at 1238-39 (citing *Pirtle*, 323 N.E.2d 634

(home search), and *Sellmer v. State*, 842 N.E.2d 358 (Ind. 2006) (vehicle search)). Similarly, the state courts of appeals have not applied *Pirtle* to custodial requests for chemical blood tests, *see Datzek v. State*, 838 N.E.2d 1149, 1158–60 (Ind. Ct. App. 2005); to chemical breath tests, *see Schmidt v. State*, 816 N.E.2d 925, 942–44 (Ind. Ct. App. 2004); or to field sobriety tests, *Ackerman*, 774 N.E.2d at 979–82. The courts have explained that these types of searches are "qualitatively different from the general, unlimited searches that concerned the *Pirtle* court"; they do not allow police to troll for evidence of any type of criminal activity, but are limited in scope and "take little time to administer." *Datzek*, 838 N.E.2d at 1159-60 (internal quotation marks omitted).

Here, Detective Benner's request for Mr. Jones's shoes fits comfortably within the category of searches to which *Pirtle* does not apply. It was limited in scope and was minimally intrusive—certainly less so than a blood sample or even a cheek swab. Mr. Jones has not come forward with any examples of Indiana cases that have required *Pirtle* warnings in circumstances similar to his, nor is there any indication that Indiana courts are inclined to extend the rule of *Pirtle* to apply in such circumstances.

We have explained that a claim of ineffective assistance based on counsel's failure to object is "tied to the admissibility of the underlying evidence." *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). If evidence admitted without objection is, in fact, admissible, then "failing to object to [that] evidence cannot be a professionally 'unreasonable' action." *Id.* The same rationale applies to counsel's failure to move to suppress; if the

evidence would not have been suppressed, then the failure to move for suppression of that evidence is not professionally unreasonable. In the present case, had Mr. Jones's counsel moved to suppress the shoes, or any evidence that resulted from the testing of the shoes, on the basis of *Pirtle*, we believe that the state court would have denied that motion. Consequently, trial counsel's failure to press an unavailing argument based on *Pirtle* was not "outside the wide range of professionally competent assistance" that *Strickland* allows, *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013), and trial counsel was not constitutionally ineffective.

**2.**

The determinative issue for the Court of Appeals of Indiana, however, was not counsel's performance, but, instead, the resulting prejudice. The state appellate court held:

> Jones does not develop a cogent argument that the mere admission of his shoes or clothing prejudiced him. As the State points out, Jones admitted to being present in Alexander's apartment and striking him. To the extent that Jones suggests that his statements to the police claiming self-defense were the poisonous fruits of the seizure of his clothes and shoes, Jones does not argue that these statements were obtained as a direct result of the search of his shoes and clothing. Further, we note that the Laboratory Examination Report indicating that the DNA profile from Jones's shoe matched Alexander's DNA profile was dated February 27, 2003, well after Jones's

> statements to the police in April 2002. We cannot say that Jones has demonstrated that he was prejudiced by the admission of his shoes or clothing. Accordingly, his claim of ineffective assistance on this basis fails.

*Jones*, 2011 WL 684625, at *9.[25] Because the Court of Appeals of Indiana resolved the prejudice prong against Mr. Jones on the merits, we apply AEDPA deference to this determination. *See Toliver v. McCaughtry*, 539 F.3d 766, 774-76 (7th Cir. 2008) (applying AEDPA standard to prejudice prong of *Strickland* analysis where state court reached that issue on the merits).

---

[25]  Earlier in its discussion, the court noted:

> Jones appears to focus his arguments on the admission of his clothes and shoes. Jones also states that "all of the inculpatory evidence was admissible" and that "the statements were inadmissible." Appellant's Brief at 22. *To the extent that Jones challenges evidence other than his shoes and clothes*, we conclude that Jones fails to put forth a cogent argument. Consequently, this issue is waived.

*Jones*, 2011 WL 684625, at *9 n.6 (emphasis added). Mr. Jones's statements to Detective Benner fall into the category of inculpatory evidence "other than his shoes and clothes." The appellate court's opinion, therefore, could be viewed as a determination that Mr. Jones had waived any argument concerning his statements for failing to develop adequately that argument. Because the court, in the body of its opinion, directly addresses Mr. Jones's statements to the police, we believe that the state court's decision is best read as determining that Mr. Jones did not meet his substantive burden of establishing a connection between the allegedly illegal seizure and the later statements.

We cannot say that this conclusion by the state court of appeals is in any way unreasonable. First, the court correctly discerned that Mr. Jones had the burden of establishing that the uncounseled seizure of his clothing resulted in the prejudicial admission of evidence against him. In *Pirtle*, 323 N.E.2d at 642, the Supreme Court of Indiana set forth the allocation of burdens of proof with respect to the fruit of the poisonous tree doctrine. It held that the defendant has the initial burden of proving that an illegal search took place and that the evidence at issue was a "fruit" of that search. *Id.*[26] At that point, the burden shifts to the State to establish that the evidence falls within some exception to the exclusionary rule. *Id.*; *see also Herald v. State*, 511 N.E.2d 5, 8 (Ind. Ct. App. 1987). Here,

---

[26] As noted previously, it is clear that the application of *Pirtle* is a question of state law. *See Clarke v. State*, 868 N.E.2d 1114, 1119 (Ind. 2007) (explaining that *Pirtle* does not have its roots in the federal Constitution but in Article I, section 11 of the Indiana Constitution). Nevertheless, we note that the approach of Indiana courts with respect to establishing a nexus parallels that taken by the federal courts. *See Gardner v. United States*, 680 F.3d 1006, 1011 (7th Cir. 2012) ("A defendant seeking to have evidence suppressed as the fruit of an illegal search need only establish a factual nexus between the illegality and the challenged evidence." (internal quotation marks omitted)); *United States v. Ienco*, 182 F.3d 517, 528 (7th Cir. 1999) (citing *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980), for the proposition that the "defendant has the initial burden of establishing a factual nexus between the illegality and the challenged evidence"); *see also United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) ("In order to determine whether challenged evidence is the fruit of an illegal search or seizure, the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." (internal quotation marks omitted)); *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (same).

therefore, the burden was on Mr. Jones to prove that the seizure of his shoes was unlawful and "that the challenged evidence"—here his statements—"was available to the State as a factual result of the police officers' illegal activity." *Herald*, 511 N.E.2d at 8. In his brief to the Court of Appeals of Indiana, however, Mr. Jones made no attempt to meet his burden by establishing this connection. His argument that his statements were fruits of the illegal search consisted of the following conclusory statement:

> [T]he theory of self-defense resulted from Jones's statements to the police. Those incriminating statements were the poisonous fruits of the illegal, warrantless seizure of Jones's clothes and shoes. Challenging the warrantless seizure of the clothes and shoes would also preclude the admissibility of the statements. *Wong Sun v. United States*, 371 U.S. 471, 487, 488 (1963); *see also, Jackson v. State*, 669 N.E.2d 744 (Ind. Ct. App. 1996).[27]

In the absence of further argument by Mr. Jones, the Court of Appeals of Indiana was justified in concluding that Mr. Jones had not met his burden of establishing a connection between the seizure of his clothes and his statements.

### 3.

Nevertheless, Mr. Jones maintains that, despite this facially apparent reasonableness, the Court of Appeals of Indiana's

---

[27]   R.23-6 (Mr. Jones's postconviction appellate brief) at 29.

decision actually was "patently unreasonable" because, in the earlier postconviction hearing in the state trial court, the judge had "denied him the opportunity to develop evidence that the statements were indeed obtained as a direct result of the search of his clothes and shoes during Jones's post-conviction examination of Benner."[28] Specifically, Mr. Jones points to the following excerpt from Detective Benner's testimony at the state postconviction hearing before the trial court:

Q. Okay. The next day after testing my shoes for blood didn't you come back to, to tell me the things you knew?

A. The tests for your shoes didn't come back for quite a bit longer, but, no, I did tell you some of the things I knew in order to get you to tell me the truth, yes.

Q. But in your—I'm, I'm making reference to Mr. Benner's—

MR. CAMPBELL: Your Honor, I object to this whole line of questioning. It is irrelevant to a post-conviction relief proceeding.

THE COURT: Response? What are you trying to prove?

MR. JONES: That my, my rights were violated. Not only was my, my, my shoes taken without consent under the Fourth Amendment,—

---

[28] Appellant's Br. 24.

THE COURT: Well, that, that's your argument. He said, he says you have consent.

MR. JONES: Right.

THE COURT: And what are you trying to show?

MR. JONES: To show that all the evidence after the initial misconduct by the police is tainted.

THE COURT: Well, the Court will assume that, because the law says that if there was a violation of your rights, at that point any evidence derived from that would be inadmissible. You don't have to establish what other evidence he had after that.

MR. JONES: Okay.[29]

In light of the trial judge's statements, Mr. Jones argues that it was unreasonable for the state appellate court "to determine that [he] failed to make a cogent argument when, in fact, he had made (and won) the argument below."[30]

We believe that a close examination of the entire record requires the conclusion that there is no merit to this argument. First, as a preliminary matter, it is incorrect to say that Mr. Jones "made (and won) [his] argument" before the Indiana trial court.[31] True enough, the transcript shows that the State objected to Mr. Jones's line of questioning and that the trial

---

[29]  Postconviction Tr. 237-38.

[30]  Appellant's Br. 25.

[31]  *Id.*

court implicitly sustained that objection on the ground that the court would assume that any evidence derived from a violation of Mr. Jones's rights was inadmissible. It is also true that the trial court's ruling was problematic. Although "[g]enerally speaking, evidence obtained pursuant to an unlawful seizure must be excluded under the fruit of the poisonous tree doctrine," the burden is initially on the defendant to show "that the evidence was a 'fruit' of that search," that is, that the evidence was derived from the constitutional violation. *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013). Therefore, the burden was on Mr. Jones to establish that the evidence he sought to suppress, namely his incriminating statements to the police, was "derivatively gained as a result of information learned or leads obtained" from the seizure of the clothing. *Id.* The state trial court, therefore, should not have pretermitted Detective Benner's testimony, which had the potential to tie the allegedly illegal seizure of the clothing and shoes to Mr. Jones's statements the following day.

At the trial court level, however, this misstep did not play a part in the court's decision. In denying postconviction relief, the state trial court did not reach the question of whether there was a relationship between the seizure of the shoes and Mr. Jones's statements because it concluded that Mr. Jones voluntarily had surrendered the clothing.[32] Therefore, contrary to his assertion, Mr. Jones did *not* prevail on his claim before the trial court: He did not persuade the trial court that the seizure of his shoes was illegal and that the seizure tainted the trial process. The trial court disagreed with Mr. Jones with

---

[32] *See supra* at 10.

respect to the illegality and, consequently, did not reach the question of nexus.

When Mr. Jones appealed, he had to convince the Court of Appeals of Indiana that he was entitled to relief. Specifically, he had to establish that the seizure of his shoes was in violation of *Pirtle* and that his subsequent inculpatory statements were the result of Detective Benner's failure to observe the strictures of *Pirtle*. Therefore, in making his arguments to the appellate court, it was incumbent upon Mr. Jones to address both the trial court's ruling on the scope of *Pirtle* as well the trial court's error that impeded him from developing a record that he was prejudiced by the *Pirtle* violation.

Mr. Jones failed with respect to this second burden. He did not attempt to explain how his statements—made the day after he had surrendered his clothing to Detective Benner, after additional *Miranda* warnings had been given, and long before the laboratory tests on his shoes were completed—were "fruits" of the "poisonous" seizure of his shoes. Notably, he never invited the appellate court's attention to the specific error by the trial court that, in his view, prevented him from establishing this point.[33] Instead, he merely asserted, *without*

---

[33]  Before this court, Mr. Jones has invited our attention to that portion of the state postconviction proceedings in which he attempted to establish the connection between the *Pirtle* violation and his inculpatory statements through the testimony of Detective Benner. *See supra* at 25-26. We note, however, that Mr. Jones also testified during the postconviction proceedings. *See supra* at 9. In that testimony, Mr. Jones stated that he "believed that because my … shoes were taken in violation of my right, Fourth Amendment right, or possible Sixth Amendment right, that all the evidence learned

(continued...)

*argument or elaboration*, that the statements were inadmissible as fruits of the poisonous tree: "Those incriminating statements were the poisonous fruits of the illegal, warrantless seizure of Jones's clothes and shoes. Challenging the warrantless seizure of the clothes and shoes would also preclude the admissibility of the statements."[34] In light of this omission, we cannot fault

---

[33] (...continued)
or gained from that illegal conduct is tainted and should have been excluded." Postconviction Tr. 262. Mr. Jones, however, did not offer any additional testimony explaining how the two were related, i.e., why Detective Benner's seizure of his shoes prompted him to make inculpatory statements. Thus, even if Mr. Jones had argued to the state appellate court that the trial court erred in curtailing his examination of Detective Benner, it is not clear that the trial court's action prevented him from establishing a connection between the allegedly illegal seizure and his later statements.

[34] R.23-6 (Mr. Jones's postconviction appellate brief) at 29. There are two other references to the fruit of the poisonous tree doctrine in Mr. Jones's brief to the Court of Appeals of Indiana. Neither helps to establish the connection between the seizure of Mr. Jones's shoes and his subsequent statements to police. First, in the facts section of his brief, Mr. Jones states that, the day following his arrest, "Detective Benner returned to question Jones again. Jones was confronted with evidence obtained from the shoes, to wit; matched shoeprints and invisible traces of blood, which Jones was compelled to explain (R.162-165). Jones then made incriminating statements and was arrested and charged for Alexander's murder." *Id.* at 12. Mr. Jones's citation to the relevant portions of the postconviction transcript, however, references testimony by one of his attorneys, and that testimony concerns the reasons why he did not object to the shoes and laboratory report. That testimony does not establish, indeed even mention, what may have prompted Mr. Jones to give statements to the police on April 11, 2002.

The second mention of the connection between the shoes and the statement is set forth in Mr. Jones's "Summary of the Argument," in which

(continued...)

the Court of Appeals of Indiana for determining that the cursory argument presented to it failed to meet Mr. Jones's burden.

By determining that Mr. Jones had not established that the admission of inculpatory evidence was the result of any *Pirtle* error, the Court of Appeals of Indiana reasonably concluded that the second, so-called prejudice prong of *Strickland* had not been satisfied. Consequently, on habeas review, we cannot conclude that Mr. Jones was prejudiced by any failure of his trial counsel.

Accordingly, the district court correctly determined that Mr. Jones has not met his burden of establishing his statutory eligibility for federal habeas relief.

---

[34] (...continued)
he states:

> Trial counsel[] failed to try to suppress inculpatory evidence and failed to object to its admission at trial. While in custody, Jones was subjected to an unlimited search without being told that he had the right to confer with counsel before allowing his clothes and shoes to be seized. After scientific testing of Jones's shoes implicated him in the murder, the police confronted him with that evidence during a second custodial interrogation and Jones made incriminating statements.

*Id.* at 14. As a factual matter, however, Mr. Jones is incorrect. The scientific testing of his shoes was not completed until long after his statements to the police: He gave his statements on April 11, 2002, and the laboratory report is dated February 27, 2003.

## Conclusion

For these reasons, the judgment of the district court denying the petition for habeas relief is affirmed.

AFFIRMED